# THOMPSON *v.* PHENIX INSURANCE COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 311. Argued April 29, 30, 1890. — Decided May 19, 1890.

Under some circumstances a receiver would be derelict in duty if he did not cause to be insured the property committed to his custody, to be kept safely for those entitled to it.

If a receiver, without the previous sanction of the court, applies funds in his hands to pay insurance premiums, the policy is not, for that reason, void as between him and the company; but the question whether he has rightly applied such funds is a matter that concerns only himself, the court whose officer he is, and the parties interested in the property.

Where a receiver uses moneys in his hands without the previous order of the court, the amount so expended may be allowed to him if he has acted in good faith and for the benefit of the parties.

When, by inadvertence, accident or mistake, a policy of insurance does not correctly set forth the contract personally made between the parties, equity may reform it so as to express the real agreement.

A policy of fire insurance, running to a particular person as receiver in a named suit, provided that it should become void "if any change takes place in title or possession, (except in case of succession by reason of the death of the assured,) whether by legal process, or judicial decree, or voluntary transfer or conveyance;" *Held,*

   (1) That this clause does not necessarily import that a change of receivers during the life of the policy would work a change either in title or possession;

   (2) That the title is not in the receiver, but in those for whose benefit he holds the property;

   (3) That in a legal sense the property was not in his possession, but in the possession of the court, through him as its officer.

The principle reaffirmed that when a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, that one will be adopted which is most favorable to the insured.

Although the policy in this case provided that no action upon it should be maintained after the expiration of twelve months from the date of the fire, yet the benefit of this clause might be waived by the insurer, and will be regarded as waived if the course of conduct of the insurer was such as to induce the insured to delay bringing suit within the time limited: and if the insured delayed in consequence of hopes of adjustment, held out by the insuring company, the latter will not be permitted to plead the delay in bar of the suit.

IN EQUITY. Decree dismissing the bill. The plaintiff appealed. The case is stated in the opinion.

*Mr. J. M. Wilson* (with whom was *Mr. Samuel Shellabarger* on the brief) for appellant.

*Mr. Robert Rae* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit was brought, July 10, 1885, by the appellant, who is the receiver in the case of *Holladay* v. *Holladay* in the Circuit Court of the county of Multnomah, in the State of Oregon. He seeks a decree reforming a policy of insurance issued by the Phenix Insurance Company of Brooklyn, New York, on the 21st day of April, 1884, and which purported, in consideration of the sum of three hundred dollars, and subject to the conditions named in the policy, to insure, for the term of one year, "E. S. Kearney, receiver for *Holladay* v. *Holladay*, against loss or damage by fire to the amount of five thousand dollars," of which sum, four thousand dollars was on one-half interest in the Clarendon Hotel, in Portland, Oregon, and one thousand dollars on a like interest in the furniture in the hotel building; and, the policy being reformed, for a decree for the amount insured with interest from the time when the loss was payable. The loss occurred on the night of May 19, 1884. A demurrer to the original bill was sustained. 25 Fed. Rep. 296. Subsequently an amended bill was filed, to which also a demurrer was sustained, and the suit dismissed. From that decree the present appeal was prosecuted.

By the terms of the policy the amount of the loss was payable sixty days after the required proofs were received at the company's office in Chicago, and the loss ascertained in accordance with the conditions prescribed, unless the property was replaced or the company gave notice of their intention to rebuild or repair the damaged premises.

The policy contained these among other provisions: " 1. . . . If the property be sold or transferred, or upon the commence-

ment of foreclosure proceedings against or sale under a trust deed of or the existence of a judgment lien upon or the issue or levy of an execution against any kind of property herein described, or if the property be assigned under any bankrupt or insolvent law, or any change take place in title or possession, (except in case of succession by reason of the death of the assured,) whether by legal process or judicial decree or voluntary transfer or conveyance, . . . then and in every such case this policy is void."

"4. If the interest of the assured in the property be any other than the absolute fee-simple title, or if any other person or persons have any interest whatever in the property described, whether it be real estate or personal property, . . . it must be so represented to the company and so expressed in the written part of this policy ; otherwise the policy shall be void. . . . *Note.* — By 'property held in trust' is intended property held under a deed of trust or under the appointment of a court of law, or property held as collateral security, in which latter case this company shall be liable only to the extent of the interest of the assured in such property."

"9. Persons sustaining loss or damage by fire shall forthwith give notice in writing of said loss to the company, and as soon thereafter as possible render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance had been made on the same property, giving copies of the written portion of all policies thereon.

"10. . . . It shall be optional with the company to repair, rebuild, or replace the property lost or damaged with like kind and quality within a reasonable time, giving notice of their intention to do so within sixty days after receipt of the proofs herein required, and until such proofs, plans and specifications, declarations and certificates, are produced and examinations and arbitrations permitted by the claimant and had, the loss shall not be payable."

"13. It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or chancery until after an award

shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within twelve months next after the date of the fire from which such loss shall occur, and should any suit or action be commenced against this company after the expiration of the aforesaid twelve months the lapse of time shall be taken as conclusive evidence against the validity of such claim, any statute of limitations to the contrary notwithstanding."

It will not be necessary to set out the allegations of the original bill because the case turns upon the question whether the amended bill states facts sufficient to constitute a cause of action. The latter makes substantially the following case:

From the 17th of November, 1883, up to and including the 19th of May, 1884, Edward S. Kearney was the receiver in the above suit of *Holladay* v. *Holladay*. From the first of those dates continuously to the time of the fire, the hotel building, with its furniture and the land upon which it stood, was in the joint possession and under the control of Kearney as receiver, and of R. Koehler and J. N. Dolph, the owners of one undivided half interest, the title to the remaining half being involved in the above suit, and in the possession and under the control of Kearney as receiver. By the order appointing the receiver he was directed and empowered to take possession of, manage, control and keep the property safely and for the best interests of the parties who should be adjudged entitled thereto, or as the court might direct. Kearney being desirous to effect insurance for himself and his successors in the receivership, as well as for the benefit of whom it might concern, on an undivided half interest in the hotel building for the sum of four thousand dollars, and on a like interest in the furniture for one thousand dollars, pending the suit of *Holladay* v. *Holladay*, and having been solicited by the defendant to take insurance in his capacity as receiver, it was understood and agreed, on the 21st of April, 1884, between the company and himself as receiver, that the former would insure, as above indicated, against loss or damage by fire, for the full term of one year from April 27, 1884, noon, making the loss and the policy payable to him as receiver and

to his successors, as well as for the benefit of whom it might concern, and that it would take from him, as receiver, the sum of three hundred dollars as premium.   On the day last named the company, with the intent to carry this agreement into effect, made the policy in question and delivered it to Kearney. At the time of this agreement it was distinctly informed that the property agreed to be insured was in dispute in the above suit, and that Kearney had no interest in it except as receiver. Nevertheless, by accident and mistake of both Kearney and the company, the loss was made payable to Kearney, receiver in the above suit, instead of to the receiver and his successors, and for the benefit of whom it might concern; and the policy was issued without the usual clause, commonly inserted in such policies and agreed upon, namely, that the insurance was effected for whom it might concern.   It was delivered by the company, and received by Kearney, in the full belief and understanding that the interests of the parties to that suit were insured and protected by it in accordance with the direction of Kearney and with the above understanding and agreement between him and the company.   The company did not at once collect the premium, but extended the customary credit therefor to the receiver as such and not otherwise.

On the 14th of May, 1884, an order was made, accepting the resignation of, and removing, Kearney as receiver, and appointing the present plaintiff in his stead, such resignation to take effect when the latter duly qualified and entered upon the performance of his duties as receiver.   The order directed the delivery to plaintiff, upon his qualification, of all property held or controlled by Kearney as receiver, which embraced, among other things, the policy in suit and the property insured or intended to be thereby insured.   The plaintiff qualified as receiver on the 19th of May, 1884, but the fire resulting in the loss sued for occurred before Kearney surrendered the possession and control of the property.   Subsequently to May 19, 1884, the policy was delivered by Kearney to the plaintiff.

The plaintiff immediately after the fire delivered to the company written notice of it, and as soon as possible there-

after, and more than sixty days prior to the commencement of this suit, rendered, under oath, a particular account of the loss, in which was included a statement of other policies, with the written portions thereof. The proofs of loss were delivered to the company and were accepted and retained by it without making any objections to them.

About thirty days after the fire and after the acceptance of the proofs of loss, the plaintiff threatened to commence suit, and informed the company's agent that he would do so. The defendant thereupon, by its duly authorized agents, stated to the plaintiff that under the provisions of the policy no suit could be brought until sixty days had elapsed after the receipt of the proofs of loss, and directed the plaintiff's attention to the provisions of the policy. These agents then and there further represented to the plaintiff that no question was made as to the loss or its payment, except that the company was considering the fact that a change had occurred in the receivership. They also asserted and represented to him that they had written to the company advising payment, and informed him that it would undoubtedly so do. Afterwards, on the 27th of June, 1884, the defendant, by its agents, demanded the payment of the premium upon the policy of insurance, assuring the plaintiff at the time that the loss would undoubtedly be paid as soon as the home office could act thereon. Relying on that representation, the plaintiff, on the day just named, paid to the company the sum of three hundred dollars as premium on the policy, and three dollars for the state stamp thereon. These sums were paid to the company out of the funds in his hands as receiver. Subsequently, and after the expiration of sixty days from the receipt of the proofs of loss, the company, by its agents, repeatedly assured the plaintiff that it would pay the loss By reason of those repeated assurances and promises he neglected, failed and was prevented, for some time after sixty days from the delivery of the proofs of loss, to bring suit for the amount insured. Long prior to the commencement of this suit the plaintiff applied to and requested the company to act toward him in such a way as was fair, equitable and just,

to correct and reform the policy, and to adjust and pay to him as receiver the sum named in the policy; but it has neglected and refused to comply with any of those requests.

By an order entered July 9, 1885, in the suit of *Holladay* v. *Holladay*, the plaintiff was directed to institute this suit, and take all necessary steps to have the policy reformed and to recover the amount due thereon.

Do these facts, which are admitted by the demurrer, make a case for reforming the policy, and entitle the plaintiff to a decree for the amount insured?

The first contention of the company is that the receiver, Kearney, had no authority, without special instructions from the court, to incur expenses or liability for insurance premiums. In support of this proposition its counsel cites *Cowdrey &c.* v. *Galveston &c. Railroad Co.*, 93 U. S. 352, where one of the questions was whether a receiver of a railroad company should be allowed for expenditures made by him, without the previous sanction of the court, in defeating a proposed municipal subsidy in aid of the construction of a railroad parallel with the one in his hands. It was held that such expenses were properly disallowed, although the proposed road, if constructed, might have diminished the future earnings of the one in his charge. This court said that to permit a receiver to determine questions of that character, and, upon such determination, appropriate funds in his custody, would sanction a principle that would open the door to all sorts of abuses. It added that "a receiver is not authorized, without the previous direction of the court, to incur any expenses on account of property in his hands beyond what is absolutely essential to its preservation and use, as contemplated by his appointment." Of the soundness of this general principle no doubt can exist, though difficulty may sometimes arise in its application to particular cases. Due regard must always be had not only to the nature and surroundings of the property in the custody of the receiver, but to the exigencies of the moment when he may be required to take action involving the safety of property in his charge. We do not doubt that under some circumstances a receiver would be derelict in duty, if he did

not cause property in his hands to be insured against fire. The case last cited is authority for the principle that, without the previous sanction of the court, a receiver may incur expenses that are absolutely essential for the preservation of the property in his custody. But if this were not so, and if, without the previous order of the court, he applies funds in his hands for such a purpose, the contract of insurance will not, for that reason, be void, as between him and the insurance company. It appears from the policy that the company was informed as to the capacity in which Kearney acted, namely, "as receiver for *Holladay* v. *Holladay*." According to the amended bill, it knew the precise nature and extent of the interest represented by him, and that he had no personal interest in the property insured. If the court, whose officer he was, had directed him to procure insurance, the present objection could not be urged with the slightest expectation of its being sustained. And yet, whether Kearney exceeded his authority, or rightly applied the funds in his hands, are questions in which no one is concerned, except himself, the court to which he was amenable, and the parties interested in the property in his charge. If. he was not, technically, authorized to use the funds in his hands to pay for insurance, still, upon the settlement of his accounts, if he acted in good faith, the court might allow him any sums paid out for that purpose. He held such relations to, and was under such personal responsibility for the safety of the property, that he could make a valid contract of insurance, although his use of the funds in his hands for that purpose was subject to the approval of the court. In *Tempest* v. *Ord*, 2 Merivale, 55, Lord Chancellor Eldon said that "formerly, the court never permitted a receiver to lay out money without a previous order of court. But now, where the receiver had laid out money without such previous order, it was usual to refer it to the master to see if the transaction was beneficial to the parties; and if found so, the receiver was allowed the money so laid out." Upon this point, *Brown* v. *Hazelhurst*, 54 Maryland, 26, 28, is instructive. In that case, objections were made to allowing a receiver for sums paid by him, without the previous

sanction of the court, for insurance. The court said: " There is no doubt of the general rule, and it is a wholesome one, that a receiver will not be permitted to lay out more than a small sum at his own discretion, in the preservation or improvement of the property under his charge; but he should, in all cases where it is practicable, or the circumstances of the case will permit, before involving the estate in expenses, apply to the court for authority for so doing. But this general rule, however salutary it may be, should not be so rigidly and sternly enforced as to work wrong and injustice, where the receiver has acted in good faith, and under such circumstances as will enable the court to see that if previous authority had been applied for, it would have been granted. The justice and right of the matter must depend, to a great extent, upon the special circumstances of each case that may be presented." In the present case, the only question that should concern the insurance company is whether, under the terms of the contract, it is liable for the loss. That question is to be determined by the contract it made, without inquiring where the receiver got the money with which to pay premiums, or as to his authority to use the funds in his hands for the purpose of effecting insurance. If the company is not compelled to pay for the loss in question except as the contract provides, it ought to be satisfied; especially as the demurrer admits that, after the loss, it collected from the plaintiff the premium of three hundred dollars which it knew or had reason to believe came out of funds in his hands as the successor of Kearney in the receivership.

The next question to be considered is whether the amended bill makes a case for the reformation of the policy. Its allegations, which are admitted by the demurrer to be true, show that before the policy was issued, the agreement between Kearney and the company was, that the insurance should run to him as receiver, and to his successors, and also to those whom it might concern; and that by inadvertence, accident and mistake, upon the part both of Kearney and the company, the policy was not so framed. The policy runs to " E. S. Kearney, receiver for *Holladay* v. *Holladay.*" Whether

Kearney's successor in the receivership might not recover upon the policy as it is, (there being no question of limitation in the case,) especially upon proof that the parties intended the insurance to cover the interest which the receiver (whoever he was at the time of the loss) represented, is a question that need not be considered. If, by inadvertence, accident or mistake, the terms of the contract were not fully set forth in the policy, the plaintiff is entitled to have it reformed, so as to express the real agreement, without the necessity of resorting to extrinsic proof. The case made by the amended bill is within the decision in *Snell* v. *Insurance Company*, 98 U. S. 85, 88, where the court said : "We have before us a contract from which, by mistake, material stipulations have been omitted, whereby the true intent and meaning of the parties are not fully or accurately expressed. A definite, concluded agreement as to insurance, which, in point of time, preceded the preparation and delivery of the policy, is established by legal and exact evidence, which removes all doubt as to the understanding of the parties. In the attempt to reduce the contract to writing there has been a material mistake, caused chiefly by that party who now seeks to limit the insurance to an interest in the property less than that agreed to be insured. The written agreement did not effect that which the parties intended. That a court of equity can afford relief in such a case is, we think, well settled by the authorities."

It is said that a decree reforming the policy ought not to be made, because it appears from one of its clauses, in respect to which no mistake is alleged, that the policy is void. If this position be correct there is an end of the case; for, as was well said by the learned judge below, the court will not reform a contract merely for the sake of reforming it, but only to enable some party to assert rights under it as reformed. The clause alluded to is the one declaring that if "any change takes place in title or possession (except in case of succession by reason of the death of the assured), whether by legal process or judicial decree or voluntary transfer or conveyance, . . . then and in every such case this policy is void." It is contended that there was a change in title and possession before

the fire, and that such change occurred when, under the order of the court, the plaintiff qualified as the successor of Kearney in the receivership. If this position be well taken, it only renders clearer the right of the plaintiff to a decree correcting the policy; for, if it be made to conform to the original agreement, there would be no pretence to say that the accession of the plaintiff to the receivership would have been a change in title or possession, within the meaning of the parties. But it is not true that the amended bill shows a change of possession before the fire. It distinctly alleges that Kearney had not surrendered possession of the property when the fire occurred. By the order appointing him, his resignation took effect when his successor entered upon his duties. It may, therefore, be said that the plaintiff had not, when the fire occurred, actually entered upon the performance of his duties. But, in our judgment, the above clause of the policy does not necessarily import that a mere change of receivers would work a change either in title or possession. The title to property in the hands of a receiver is not in him, but in those for whose benefit he holds it. Nor in a legal sense is the property in his possession. It is in the possession of the court, by him as its officer. *Wiswall* v. *Sampson*, 14 How. 52, 65; *Heidritter* v. *Elizabeth Oil Cloth Co.*, 112 U. S. 294, 304; *Chicago Union Bank* v. *Kansas City Bank*, just decided, *ante*, 223. So that where a policy runs to a receiver in a designated suit, a mere change of receiver does not involve a change in title or possession. If an insurance company intends its policy to mean otherwise it must express that intention more distinctly than was done by the defendant. If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because those instruments are drawn by the company. *National Bank* v. *Insurance Co.*, 95 U. S. 673, 678.

It remains only to consider the question arising out of that clause of the policy limiting the time within which a suit or action against the company for the recovery of a claim arising

out of its provisions may be sustained. While the validity of such a stipulation cannot be disputed, *Riddlesbarger* v. *Hartford Ins. Co.*, 7 Wall. 386, 389, we do not doubt that it may be waived by the company. And such waiver need not be in writing. It may arise from such a course of conduct upon its part as will equitably estop it from pleading the prescribed limitation in bar of a suit by the insured. It is to be observed that, by the terms of the policy, the company is not obliged to pay any claim until after the expiration of sixty days from the receipt of the proofs of loss at its office in Chicago, and the ascertainment of the loss in accordance with the terms of the policy. A suit, therefore, within the sixty days after the loss is so ascertained would, upon the theory of the company, be of no avail to compel payment if it chose to plead the above clause in bar of the action. So that, practically, the assured is limited to ten months within which he may sue as of right. And yet the twelve months within which suit must be brought is made to commence at "the date of the fire," not from the date when the loss is payable. There are, it is said, adjudged cases that would authorize such a construction of this policy as would give the insured the whole term of twelve months from the date when he could demand, as of right, that his claim for loss be satisfied. *Vette* v. *Clinton Fire Ins. Co.*, 30 Fed. Rep. 668; *Steen* v. *Niagara Fire Ins. Co.*, 89 N. Y. 315, 322; *Spare* v. *Home Mut. Ins. Co.*, 17 Fed. Rep. 568, 570; *Mayor &c.* v. *Hamilton Fire Ins. Co.*, 39 N. Y. 45, 48; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235, 244; *Chandler* v. *St. Paul Fire & Marine Ins. Co.*, 21 Minnesota, 85; May on Insurance, § 479, notes 2d ed. We waive, however, any expression of opinion, in the present attitude of the case, as to the view announced in those cases, for its disposition only requires us to hold, as we do, that the allegations of the amended bill, bearing upon this point, sustain the right of the plaintiff to bring this action, although it was not commenced until after the expiration of twelve months from the date of the fire. Those allegations are to the effect that the company, by its duly authorized agents, assured the plaintiff about thirty days after the fire

and after the acceptance of the proofs of loss, that no question was made as to the loss or its payment, except that the company was considering the fact of the change in the receivership, and that it would undoubtedly pay the loss claimed; that as late as June 27, 1884, the premium of three hundred dollars was paid to the company, which, by its agents, again assured the plaintiff that the loss would be paid as soon as action could be taken; that after sixty days had elapsed from the delivery of the proofs of loss, the company, by its agents, repeatedly gave the same assurances; and that, by reason of such promises and assurances, he neglected, for some time after sixty days from the delivery of proofs of loss to bring suit for the recovery of the loss sustained. We need not stop to consider the suggestion that the agents referred to had no authority to give those assurances or to make those promises. No such question can arise upon the amended bill, for it alleges that the company, by its duly authorized agents, made the promises and gave the assurances. What the fact may be, in respect to the authority of the agents, or whether the plaintiff had the right to rely upon those assurances and promises, and, if he did, whether the company's rights were thereby affected, are questions not now to be decided. Their determination will depend upon the answer and the evidence at the trial. If, as the allegations of the amended bill imply, the failure of the plaintiff to sue within the time prescribed by the policy, computing the time from the date of the fire, was due to the conduct of the company, it cannot avail itself of the limitation of twelve months. *Curtis* v. *Home Ins. Co.,* 1 Bissell, 484, 487; *Ide* v. *Phœnix Ins. Co.,* 2 Bissell, 333; *Grant* v. *Lexington Ins. Co.,* 5 Indiana, 23, 25; *Mickey* v. *Burlington Ins. Co.,* 35 Iowa, 174, 180. In the case last cited it was properly said that it would be contrary to justice for the insurance company to hold out the hope of an amicable adjustment of the loss, and thus delay the action of the insured, and then be permitted to plead this very delay, caused by its course of conduct, as a defence to the action when brought.

We are of opinion that the court erred in sustaining the demurrer to the amended bill.

*The decree is reversed with directions for such further proceedings as may be consistent with this opinion.*