## In re HAMILTON et al.

(District Court, W. D. Arkansas, Texarkana Division. June 15, 1900.)

1. FIRE INSURANCE—PLEDGE OF POLICY—BANKRUPTCY—ASSIGNMENT OF POLICY TO RECEIVER—TITLE TO INSURANCE.

   After a policy of fire insurance, providing that the same should be void in case of any change in the interest, title, or possession of the subject of the insurance, had been pledged to a bank as collateral security for a debt due from the insured, the latter was adjudged a bankrupt, the property insured placed in the hands of a receiver, and the policy assigned to the receiver, with the consent of the insurance company. Thereupon the bank, which had paid the premium, presented its bill therefor to the receiver, who paid the same without notice that the policy had been pledged. *Held*, that the assignment of the policy to the receiver, with the consent of the company, operated as a new and substantive contract, by which the rights of the bank as pledgee were terminated, and upon a loss accruing the receiver was entitled to the insurance as against the bank.

2. SAME—BANKRUPTCY—RECEIVER HAS INSURABLE INTEREST.

   A receiver of the property of one adjudged a bankrupt, under the bankrupt law, has an insurable interest in the property so held.

3. SAME—CLAIM FOR PREMIUM—PREFERENCE.

   One who has paid the premium upon a policy of fire insurance held by him under a pledge, and which is afterwards assigned to the receiver of the insured in bankruptcy, is not entitled to a preference for the payment of such claim, and the payment thereof by the receiver is unauthorized.

In Bankruptcy.

The facts in this case are as follows:

Hamilton, McMillion & Co. were a firm of merchants at Prescott, Ark. On the 15th of October, 1899, a petition in bankruptcy was filed against the firm, and on November 13th following it was adjudicated a bankrupt. On filing the petition in bankruptcy, proper steps were taken, and the assets of the firm were put into the hands of one White, as receiver. While the property was in the hands of the receiver, and before the adjudication in bankruptcy, the property was burned. The firm of Hamilton, McMillion & Co., during the years 1896, 1897, 1898, and 1899, became indebted to the Nevada County Bank for borrowed money to the extent of about $5,500, and the sums were evidenced by various notes, the last of which was dated April 24, 1899. On the 7th of September, 1898, Hamilton, McMillion & Co. took out a fire insurance policy for $2,000 with the National Fire Insurance Company of Hartford, Conn., and it was recited in the policy that the loss, if any, under the policy, "payable to the Nevada County Bank, as its interest may appear." This policy expired on the 7th of September, 1899, and it was renewed in the same company, and the same "loss-payable clause" inserted. Both of these insurance policies contain this provision: "This entire policy, unless otherwise provided by agreement, indorsed hereon or added hereto, shall be void if * * * any change other than by the death of an insured takes place in the interest, title, or possession of the subject of insurance, * * * whether by legal process or judgment, or by voluntary act of the insured, or otherwise, or if this policy be assigned before a loss." Indorsed on the policy, dated the 11th of November, 1899, is the following:

"The interest of Hamilton, McMillion & Co., as owner of property covered by this policy, is hereby assigned to W. R. White, receiver, subject to the consent of the National Fire Insurance Company of Hartford.

"Dated November 11, 1899.       Hamilton, McMillion & Company."

And also as follows:

"The National Fire Insurance Company of Hartford consents that the interest of Hamilton, McMillion & Company, as owners of the property covered by this policy, be assigned to W. R. White, receiver.

"Dated November 11, 1899.       O. B. Gordon, Agent."

The renewed policy, containing the above indorsements, was in force when the fire occurred and when the money was paid. After the fire, White, who was the receiver, was made the trustee in bankruptcy of Hamilton, McMillion & Co. The premium on the last-named insurance policy was paid by the bank, who now claims that the policy, which expired on the 7th of September, 1898, had been pledged to it at the time it was issued, and that the policy issued on the 7th of September, 1898, was but a renewal of that, and was also pledged to it under the original agreement with Hamilton, McMillion & Co. to secure their indebtedness to the bank, and that it held the same at the time the fire took place as such pledge. It also appears that, before Hamilton, Mc-Million & Co. were adjudicated bankrupts, the bank presented its claim for the premium on the last policy to the receiver, who paid the same; that when the indorsements heretofore set out on said policy were made, and when the premium was paid to the bank, White, as receiver, had no notice whatever of the existence of such pledge. After the fire the bank and White, both as trustee and as receiver, united, and brought suit against the insurance company, alleging that the policy had been pledged to the bank, agreeing at the same time that the question as to whether or not the money belonged to the bank or belonged to the trustee should be reserved for the bankruptcy court, and that the allegation in relation to the pledge of the policy to the bank should not estop either party from claiming the money in the bankruptcy court, or in any way prejudice the claim of either thereto. The Nevada County Bank now intervenes for the money so recovered, and bases its claim upon the ground that the insurance policy at the time it was issued was pledged to it to secure its indebtedness by Hamilton, McMillion & Co., the bankrupt. Any other facts in the case necessary to its determination will appear in the opinion.

C. C. Hamby, for trustee.

W. V. Tompkins, for bank.

ROGERS, District Judge (after stating the facts as above). It is not contended that the "loss-payable clause" contained in the policy gave the bank any right to the money. The contention, if made, could not be upheld, because the bank had no insurable interest in the property covered by the policy. In re Lumber Co. (D. C.) 92 Fed. 586; Insurance Co. v. Chase, 5 Wall. 512, 18 L. Ed. 524. The contention of the bank is that the insurance policy was pledged to it to secure its indebtedness. The testimony on this point is in irreconcilable conflict. The referee in bankruptcy found that the policy had not been pledged. It may be doubted whether the weight of the testimony sustains the finding, but this much must be said: The referee took this testimony, and it is altogether probable he is personally acquainted with the parties testifying, and therefore better situated to test their credibility than the court. His findings of fact, therefore, should not be disturbed, unless the court is clearly satisfied that the same are erroneous. I do not think it necessary, however, for the court to decide that question at all, and I express no opinion in regard thereto. By the very terms of the policy itself it is provided "that the entire policy shall be void if any change other than by the death of the insured takes place in the interest, title, or possession of the subject of insurance, whether by legal process or judgment, or by the voluntary act of the insured or otherwise, or if the policy be assigned before a loss." The subject of insurance in this case did change hands before the loss. If, therefore, the loss had occurred after the subject of insurance changed hands, and before the assignment of the policy to the receiver, neither the bank nor

the insured could have recovered anything against the company. The pledge of the policy, therefore (if there was a pledge at all), became no pledge, because there was no living policy the very moment the property passed from the possession of the insured into the hands of the receiver. Moreover, before a loss, this policy was assigned by the insured to the receiver.

May, Ins. § 276a, states:

"If partnership property is put into the hands of a receiver before loss, the transfer is an alienation that voids the policy. The same is true of an assignment in bankruptcy."

"The assignment of a policy as collateral security voids a policy which stipulates against an assignment in whole, or of any interest in it, under penalty of forfeiture." Id. § 380.

If, therefore, the insured in this case had assigned this policy to the receiver without the assent of the insurers, the policy itself would have been absolutely void, and no recovery could have been had at all, either by the pledgee or the assignee. But in this case it appears that the assignment by the insured to the receiver was with the consent and approval of the insurers. Hamilton, McMillion & Co., as owners of the property covered by the policy, assigned the interest of that firm to W. R. White, receiver, subject to the consent of the National Fire Insurance Company of Hartford, and at the same time the National Fire Insurance Company of Hartford consented that the interest of Hamilton, McMillion & Co. as owners of the property covered by the policy be assigned to White as receiver.

May, Ins. § 276, states:

"If the original insured, by the consent of the insurers, assigns the policy, and the assignees agree that the insurers pay all assessments which shall thereafter be made upon the policy, and that the property insured shall remain subject to the same lien as before, the legal effect of the transaction is to create a new, substantive, and distinct contract with the assignees. It is substantially the same as if the policy had been issued to them."

That is precisely what was done in this case. True, there were no assessments to be made. The bank had taken out the policy and paid the premium. The policy, by the written consent of the insured and the insurers, was assigned to the receiver, and the receiver paid the bank the premium which it had advanced. This became a new and substantive contract between the insurance company and the receiver. If, therefore, the insurance policy, as it originally stood, had been pledged to the bank, it no longer remained a pledge after the new contract was entered into, because the policy no longer was a contract between the original parties thereto, but a new and substantive contract between the insurance company and the receiver. The receiver, of course, without the authority of the court, would have no authority to pledge the insurance policy to the bank or to any other person, and he could not, of course, have the sanction of the court in pledging the policy to secure a past indebtedness to one creditor. However that may be, there is no evidence whatever that the receiver at the time he paid the premium, or at the time the assignment was made, knew that any pledge of the policy had been made to the bank, or attempted himself to make any pledge thereof to the bank. The mere fact, if it be true, that the bankrupts, prior to the filing of the petition, had

deposited the policy as a pledge with the bank to secure its indebtedness, could not enable the bank to hold the policy as a pledge after the insurance company had entered into the new contract with the receiver. No contract between the insured and the bank could in any wise affect the power and authority of the insurance company to cancel the policy and to make a new contract with the receiver. The effect of what was done in this case was to make a new contract between the insurance company and the receiver, thereby, in legal effect, canceling the original policy between the insurance company and the insured, and the making of a new contract as between the insurance company and the receiver.

The law is settled that the receiver had the right to take out insurance upon the property which came to his hands. Insurance Co. v. Chase, 5 Wall. 512, 18 L. Ed. 524; Thompson v. Insurance Co., 136 U. S. 294, 10 Sup. Ct. 1019, 34 L. Ed. 408. It is equally well settled that he had no authority whatever to pay the premium to the bank upon a policy which had become forfeited by the action of the court in taking the property out of the hands of the bankrupts, and placing it in the hands of the receiver. The bank, having advanced the money, of course had a claim against the bankrupt's estate that it might prove as any other creditor, but it was not entitled to be paid by the receiver or to receive a preference. For the reasons stated, I am of the opinion that the action of the referee should be affirmed, and the relief sought by the bank denied.