## ST. PAUL FIRE & MARINE INS. CO. v. BACHMANN.
### No. 2997.

Circuit Court of Appeals, Fourth Circuit.
April 13, 1931.

WATKINS, District Judge, dissenting.

James M. Guiher, of Clarksburg, W. Va. (Russell L. Furbee, of Fairmont, W. Va., and Steptoe & Johnson, of Clarksburg, W. Va., on the brief), for appellant.

Charles J. Schuck and Carl G. Bachmann, both of Wheeling, W. Va. (Handlan, Garden & Matthews and Schuck, Bachmann & Grimes, all of Wheeling, W. Va., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and WATKINS and WEBB, District Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment for $4,591.84 rendered in favor of the appellee, Sophia C. Bachmann, against the appellant, St. Paul Fire & Marine Insurance Company, a corporation, by the District Court of the United States for the Northern District of West Virginia, at Wheeling, in November, 1929. The judgment was rendered in an action of assumpsit prosecuted upon a policy of fire insurance in the amount of $4,000, covering a three-story brick business building located on Main street in the city of Wheeling.

The insured building was badly damaged by fire in December, 1925, and it was claimed by appellant that three moonshine stills were found in the building after the fire, and that large quantities of gasoline, used in the operation of the stills, were in the building at the time of the fire, and the fire was caused by an explosion, due to the operation of the stills.

The building was managed by the husband of appellee, who as agent for the appellee had for many years attended to all the details of supervising, maintaining, and leasing the building. It is conceded that appellee knew nothing about the building, the tenant, or the insurance. The building was leased to a man by the name of Varisca, in October, 1925, by appellee's husband, for a term of eighteen months, and appellee's husband testified that Varisca had paid him in advance the sum of $1,750 in cash on the rent; the building being leased supposedly for the purpose of conducting a wholesale business therein.

Evidence was offered on behalf of appellant tending to show that Bachmann, the agent, knew, or should have known, that the building was used for operating stills. This was vigorously denied by Bachmann, and in submitting the case to the jury the judge instructed in the language of the policy.

Two main points are raised by appellant: (1) That, in construing the "Increase of Hazard Warranty," the trial court erred in refusing to instruct the jury that an increase of hazard upon the insured premises was "within the control or knowledge of the insured," if the insured or agent had "reasonable cause to believe or know" of the existence of the stills, even in the absence of actual knowledge; (2) that the trial court erred in its charge to the jury with respect to the insurance company's defense based upon the "Prohibited Articles Warranty" in the policy.

With respect to the increased hazard question, the policy provided as follows: "Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage occurring * * * (b) while the hazard is increased by any means within the control or knowledge of the insured."

We know of no authority contrary to the principle that an insurance policy will be construed in a manner most favorable to the insured. This has been held by this court. Missouri State Life Insurance Co. v. Guess, 17 F.(2d) 450, and cases there cited.

In the case of Mutual Life Insurance Co. of New York v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102, Mr. Justice Sutherland said: "The language employed is that of the company and it is consistent with both reason

and justice that any fair doubt as to the meaning of its own words should be resolved against it. First National Bank v. Hartford Fire Insurance Co., 95 U. S. 673, 678, 679, 24 L. Ed. 563; Thompson v. Phenix Insurance Co., 136 U. S. 287, 297, 10 S. Ct. 1019, 34 L. Ed. 408; Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 462, 14 S. Ct. 379, 38 L. Ed. 231."

Here the judge below charged the jury in the language of the policy, and we think fairly. It is not incumbent upon the courts to write another or a different contract of insurance between the parties. Had the insurance company desired to add to the contract the words "reasonable cause to believe or know," it should have written the same into the policy, and we are of the opinion that the action of the judge below was right with regard to this question.

On the second point, as to the prohibited articles warranty, the policy provided: "Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage occurring (d) * * * while (any usage or custom to the contrary notwithstanding) there is kept, used or allowed on the described premises * * * explosives * * * gasoline * * * or any other petroleum product of greater inflammability than kerosene oil."

After the issuance of the policy, the use to which the building was being put at the time of the issuance of the policy being changed, an agent of the insurance company inspected the building, and the following rider was attached to the policy:

"$4,000.00 on three story brick building, with approved roof, and its additions, adjoining and communicating, occupied for bottling automobile oils, offices and other mercantile purposes not more hazardous, including foundations * * *

"*Privileges granted.* To keep for sale not to exceed fifty pounds of gunpowder and ten barrels of kerosene oil * * * and for present and other occupancies not more hazardous and to do such work and to keep and use such materials as are usual in such occupancies."

The Handbook of Rules in use by the West Virginia Fire Underwriters' Association, used by insurance companies doing business in West Virginia in 1925, and required to be filed in the office of the commissioner of insurance of that state, provided as follows:

"Privilege for present and other occupancies not more hazardous and to do such work and to keep and use such materials as are usual in such occupancies."

"Note: It is understood that the word 'materials' as used above, includes gasoline, and such other materials as are prohibited by the printed conditions of the policy, when kept and used for such purposes as are usual to the occupancies permitted."

At the time of the inspection by the agent of the insurance company, and the attachment of the rider to the policy, the building was being used for the handling and bottling of automobile oil, and it was shown that gasoline was stored in the building, and that the agent of the insurance company saw that gasoline was being used and stored in the building. It was contended on the trial below that this rider constituted a permit for the handling of gasoline within the building, and that its effect was to remove gasoline from the prohibited articles warranty, and that the quantity of gasoline, if greater than used at the time of the issuance of the permit, brought this question into the increased hazard class. The trial court took this view of the case, and we think properly so. The agent of the insurance company knew that the rider permitted the use of gasoline, at least to some extent, and, in order to show that the hazard was increased by a greater use of gasoline, as a defense to the recovery by the insured, the insurance company must under the terms of the policy, as above discussed, bring such fact "within the knowledge and control" of the insured or her agent.

A number of other assignments of error were made with respect to instructions allowed or disallowed, and the admission of evidence, or the refusal to admit evidence, but an examination of the record does not disclose them to be of great importance, and none of them constitute, if error at all, vital error. It follows that the judgment of the court below upon the verdict of the jury is affirmed.

WATKINS, District Judge, dissents.