## ATLANTIC LIFE INS. CO. v. PHARR.
### No. 5981.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

Alex W. Parker, of Richmond, Va., and R. E. King, of Memphis, Tenn. (Ewing, King & King, of Memphis, Tenn., on the brief), for appellant.

S. P. Walker and W. H. Borsje, both of Memphis, Tenn. (Miles, Waring & Walker, of Memphis, Tenn., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The sole question presented by this appeal is whether the policy of life insurance issued upon the life of Walter N. Pharr, June 16, 1920, was in force at the time of the death of the insured by virtue of its automatic nonforfeiture clause and its provision for extended term insurance. At the time of the issue of this policy the insured was a resident of the state of North Carolina; the Atlantic Life Insurance Company was a corporation organized under the laws of the state of Virginia; and at the time of his death the insured was a citizen of the state of Tennessee, where suit was brought; but none of the statutes of these several states controls the question to be decided.

The application of the insured was for a policy of "ordinary life, annual dividend, new disability plan." A policy purporting to cover these requirements was issued, but we are here concerned only with the provisions made for annual dividends and post mortem dividend, the automatic nonforfeiture clause, and the provision for cash value or extended term insurance printed in the margin.[1] On

---

[1] *Annual Dividends.* The Company will determine at the end of each year the amount of surplus to be allotted to this Contract. Upon payment of the second and each succeeding premium, the surplus allotted to this Contract shall, at the option of the Insured, be either—

1. Paid in cash; or,

2. Applied toward the payment of any premium or premiums; * * *.

*Post Mortem Dividend.* In the event of the death of the Insured after the first Contract year, and while this Contract is in full force by payment of premiums, a Post Mortem Dividend will be paid on account of the surplus earnings for the period from the due date of the last Dividend to the date of death.

*Automatic Non-Forfeiture Provision.* Upon the nonpayment of any premium after the second, without action on the part of the Insured, the Company will advance such premium, also subsequent premiums, with interest at 6% per annum due annually in advance, as a premium loan secured by this Contract, so long as such loan together with all other indebtedness and with interest at 6% per annum due annually in advance, does not exceed the Cash Value of this Contract, plus any dividends on deposit, or the Cash Value of any additional paid-up insurance, at the end of the period to which any such premium or interest applies. * * *

If the available Cash Value be insufficient to pay an annual premium and interest as above stated, the Company will continue the Contract as Extended Term Insurance for such time as the balance of value will permit. * * *

*Cash Value or Extended Term Insurance.* After this Contract has been in force for two full years, on the non-payment of any subsequent premium, the Insured, on satisfactory release and surrender of this Contract within ninety days thereafter (in-

June 16, 1926, that is, when the contract had been in force for six full years, and when it had a cash surrender or loan value of but $1,420, according to the table of such values made part of the policy, the company loaned to the insured the sum of $1,740, the cash surrender value at the end of the then ensuing year, which sum was applied to the payment of the current premium, of a previous loan, and of interest charges, and the balance ($111.80) was paid in cash to the insured. Upon the due date of the June 16, 1927, premium, no payment was made. After the expiration of the period of grace, the agent of the company suggested reinstatement. Application for reinstatement was made, but was rejected except and unless upon a new medical examination. Such examination was never had. The premium notice contained the following statement:

"Surplus earnings of $115.20 under the above numbered policy will be due upon payment of the 1927 premium. The surplus earnings may be applied as follows:

"1st—Drawn in cash; or,

"2nd—*Applied to the payment of premium;* or,

"3rd—Applied to the purchase of $240.00 fully paid up insurance payable at maturity, in addition to the face of the policy; or,

"4th—Left with the Company to accumulate to your credit."

The District Court held that these "surplus earnings" (dividend) were available under the automatic nonforfeiture clause for the purchase of extended term insurance, and it is conceded that, if so applied, the policy was in full force and effect at the date of the death of the insured October 12, 1927. The appellant contends that the dividend was available for the purposes mentioned, under the policy provision for annual dividends, only if the premium for the then current year was paid, and that, if such premium were not paid, the insured having already borrowed the entire amount of the cash surrender value as of the due date of the premium, no fund whatever was available for the purchase of extended term insurance.

The appellee earnestly insists that, entire-

cluding days of grace), shall be entitled to the Cash Surrender Value as stated in the table of Surrender Values, or in lieu thereof, the insured shall be entitled to Participating Extended Term Insurance as stated in said table, which value shall be increased by the value of any additional paid-up insurance then to the credit of the Contract. * * * Such values are based upon the reserve by the American Experience Table of Mortality with 3½% interest. * * *

ly apart from the availability of the dividend for the purchase of extended term insurance, the policy contained the statement that cash values were based upon the reserve by the American Experience Table of Mortality with 3½ per cent. interest; that a reference to this table discloses that an ordinary life policy with annual dividend carried a cash surrender value at the end of its seventh year sufficiently in excess of the surrender value stated in the policy to purchase the necessary extended insurance; that the company, by reason of the application and policy, both calling for an "ordinary life" policy, was obligated to set aside the reserves shown in the American Experience Tables; and that the insured was entitled to these reserve values whether shown in the policy or not. The actuary of the insurance company testified that no reserve whatever was set aside for this policy for the first year; the insurance being treated as term insurance for that year and as ordinary life insurance for the following years.

While there may be some doubt as to the natural equity of the company's position, in calculating the reserve according to a preliminary term valuation, and while apparently premiums were charged in excess of the company's rate for the attained age of the insured, indicating a premium write-up for some unexplained reason, we are not prepared to say that the express provisions of the policy as to cash surrender and loan values are void and of no effect because of the general statement that they were "based upon" the American Experience Table of Mortality with 3½ per cent. interest. This statement is perhaps true enough, so far as it goes. The true ground for criticism of this language is that the first year that the policy was in force was eliminated entirely from the calculation, as being a period of term insurance, and the amount of reserve was thereafter more or less closely "based upon" the American Experience Tables. However, this is a matter upon which the parties were free to contract. They have not specifically contracted that the American Experience Tables should control, but, on the contrary, have specifically agreed as to the exact amounts of the cash surrender and loan values at the end of each of the years stated. The policy provisions entitling the insured to the cash surrender value refer to such value "as stated in the table of surrender values." The fact that the insured was deceived as to the identity of these values with the reserve calculated by the American Experience Tables with 3½ per cent. inter-

est cannot alter the amounts stated or entitle the insured to a contract covering the larger amounts as upon reformation.

■ Upon the ground upon which the District Court decided the action, we are unable to agree with the contention of appellant that the insured is entitled to the benefit of his dividend only if and when the premium for the ensuing year has been paid. It is true that the provision in the policy entitles the insured to only such dividends as shall, from time to time, be allotted to the contract, and, further, that *"upon payment* of the second and each succeeding premium, the surplus allotted to this contract shall, at the option of the insured, be * * * 2. Applied toward the payment of any premium or premiums" (italics ours), but the last premium notice advised the insured that surplus earnings of $115.20 would be due upon payment of the 1927 premium and that this sum might be applied to the payment of such premium. This was in itself an allotment of the dividend. Another fund available for the same purpose was the cash surrender value; and it is worthy of notice that the contract specifically provides that, if such cash surrender value be insufficient to pay an annual premium and interest, the company will continue the contract as extended term insurance for such time as the balance of value will permit. The contract also provides that after it has been in force for two full years the insured, on the nonpayment of any subsequent premium, shall be entitled to participating extended term insurance as stated in the schedule attached to the policy. Even after the policy has matured by death of the insured, the beneficiary is entitled to a post mortem dividend on account of surplus earnings from the date of the last dividend to the date of death.

These provisions, we think, must be read in pari materia, and, when so read, they strongly evidence to us an agreement that the insured shall annually share in surplus earnings; that the policy shall not be forfeited if the company has funds which the insured is entitled to apply to the payment of premiums; that in such event the company will make the necessary application of funds to keep the policy in force for another year, if that is possible, but, if the funds are insufficient for this purpose, then the company will continue the contract as extended term insurance for such term as the amount available will purchase.

Obviously, by the provisions of the policy and by the terms of the premium notice,

the dividend allotted to this policy was subject to be applied by the insured to the payment of the premium. Quite as clearly, also, the amount of the dividend was insufficient to pay the whole of an annual premium. Either upon the ground that the policy should be construed as entitling the insured to the dividend "at the time fixed for payment of the premium," or on the ground that the "cash value" referred to in the automatic nonforfeiture provision must be deemed to include any dividend already allotted to the contract, or upon both grounds, we are of the opinion that this dividend represented funds in the hands of the company which the insured was entitled to have applied toward the payment of premiums, and which, if retained by the company, must be applied to the purchase of extended term insurance, inasmuch as such funds were insufficient to pay the entire annual premium.

■ So-called dividends upon life insurance policies are not really "dividends," but are the return by a mutual company of the unearned portion of the premium for the past year, unearned because of saving in expected mortality, saving in expense loading, and increase in investment earnings over the expected $3\frac{1}{2}$ per cent. To the extent of the combined savings due to these three elements, theoretically at least, the premiums paid in advance are regarded as having been excessive or unearned. The dividend is a return of such unearned portion of a premium already paid, and normally should be available to the insured at the end of the policy year if effect is to be given to their true purpose. Had the policy matured by death, this payment would have been made by a post mortem dividend. This policy was a *"mutual"* one, and in any event, if the meaning of the language used by the company is open to doubt, that doubt must be resolved against the company and in favor of the insured. Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408; Hunt v. Springfield F. & M. Ins. Co., 196 U. S. 47, 25 S. Ct. 179, 49 L. Ed. 381; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. So construing the provisions of the policy as a whole, we are constrained to the opinion that the company was under obligation to apply the theretofore allotted dividend toward the payment of the premium for extended term insurance in the amount of the face of the policy. We see no substantial difference between the application which should be made

of these funds and the application which is required of other funds, viz. the cash surrender value. The policy was thus in force at the time of the death of the insured, and the decree of the District Court must be affirmed.