## WHEELER et al. v. ÆTNA INS. CO.

District Court, E. D. New York.
Jan. 24, 1933.

See, also, 51 F.(2d) 374.

Crowell & Rouse and E. Curtis Rouse, all of New York City, for libelants.

Single & Hill and Forrest E. Single, all of New York City, for respondent.

CAMPBELL, District Judge.

This suit is brought to recover on a marine insurance policy for damages caused by the explosion on and sinking of motorboat Wheeler Shipyard Hull No. 304, alleged to be covered by said policy.

I find the facts as follows:

At all the times hereinafter mentioned and at the time of the trial, the libelants Edith Wheeler, E. Lawrence Wheeler, and Wesley I. Wheeler were partners doing business under the firm name and style of Wheeler Shipyard, having their principal office and shipyard on Coney Island creek, at the foot of Harway avenue, borough of Brooklyn, city and state of New York, within this district.

At all of said times the respondent Ætna Insurance Company was a corporation organized and existing under and by virtue of the laws of the state of Connecticut, having been duly authorized to transact business in the state of New York, and having an office for the transaction of such business at 149 Pierrepont street, borough of Brooklyn, city and state of New York, within this district.

At all of said times the libelants were the owners of the motorboat Wheeler Shipyard Hull No. 304.

On or about November 12, 1929, in consideration of a premium of one-quarter per cent., to wit, the sum of $28.75, duly paid to the respondent by libelants, said respondent issued to libelants its policy of insurance No. V 62871, for $11,500 agreed value, loss, if any, payable to libelants and/or any owner or owners of the vessel, as interest may appear at the time of the happening of the loss, or order, covering said libelants from November 12, 1929, to December 12, 1929, upon said motorboat Wheeler Shipyard Hull No. 304, and from time to time thereafter, the libelants paid to the respondent certain further additional premiums, in consideration of which said respondent, among other things, extended the period of said policy to a time not later than June 12, 1930.

The policy as issued was a builders' risk policy, and contained, among others, the following terms and provisions:

"Ætna Insurance Company by this policy of insurance do make insurance and cause Wheeler Shipyard for account of themselves, loss, if any, payable to them or order, to be insured for the sum of Eleven thousand, five hundred dollars ($11,500), upon the good hull called No. 304, her body, tackle, apparel, stores, supplies, furniture, engines, boilers, machinery and appurtenances. * * *

"It is also agreed that this policy shall become void, if any other insurance is or shall be made, upon the interest hereby insured, which together with this insurance shall exceed the sum of ——— dollars. * * * Touching the adventures and perils which we, the said assurers, are contented to bear and take upon us, they are of the seas, men-of-war, fire, enemies, pirates, rovers, thieves, jettisons, letters of mart and countermart, surprisals, takings at sea, arrests, restraints and detainments of all kings, princes and people, of what nation, condition or quality soever, barratry of the master and mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said ship, &c., or any part thereof. * * * With leave to sail with or without pilots, to tow and be towed, and to assist vessels and/or craft in all situations and to any extent, and to go on trial trips. With liberty to discharge, exchange and take on board goods, specie, passengers and stores, wherever the vessel may call at or proceed to, and with liberty to carry goods, live cattle, &c., on deck or otherwise, but warranted free of any claim in respect of deck cargo. * * *

"Clauses for Builders' Risks.

"This insurance is also to cover all risks, including fire, while under construction and/or fitting out, including materials in buildings, workshops, yards and docks of the assured, or on quays, pontoons, craft, &c., and all risk while in transit to and from the works and/or the vessel wherever she may be lying, also all risks of loss or damage through collapse of supports or ways from any cause whatever, and all risks of launching and breakage of the ways.

"This insurance is also to cover all risks of trial trips, loaded or otherwise, as often as required, and all risks whilst proceeding to and returning from the trial course, but warranted that all trials, and proceeding to and returning therefrom, shall be carried out within a distance by water of 100 nautical miles of the place of construction or held covered at a rate to be arranged. * * *

"In the event of deviation to be held covered at an additional premium to be hereafter arranged. + * *

"The words 'owner' and 'assured' as used in this policy shall be interpreted to mean either 'builder' or 'owner' or both."

The policy by successive indorsements and payment of additional premiums was in force on May 6, 1930, and the libelants by their broker informed the respondent of their desire to send the said motorboat by water to Syracuse, and to have it covered on said voyage by said policy.

In consideration of an additional premium of $57.50, the said respondent, on May 6, 1930, made the following indorsement on said policy: "In consideration of an additional premium as noted hereon, this insurance is extended to cover the above vessel for one trip by water from the yard of the assured via any port or place to Syracuse, N. Y. sailing on or about May 6th, 1930 against the perils covered by this policy."

The motorboat left Brooklyn, N. Y., bound for Syracuse, in charge of an employee of the libelants, and on May 9, 1930, was taken in charge from him by Capt. Brown, an employee of the libelants.

Between Brooklyn and Albany the said motorboat suffered damages from striking a submerged object, a notice of which was given in writing by the broker of the libelants to the respondent on May 16, 1930, formal proof of which damage was later made by libelants and paid to them by respondent.

The motorboat was taken to Watervliet, where repairs were made, and she then continued on her voyage.

The boat never went to Syracuse proper, but was taken to Brewerton, at the western end of Oneida Lake, 14 miles from Syracuse, by automobile, where the libelants had their boathouse, where she arrived before May 16, 1930, and where her engine was taken out of her for the making of repairs.

On May 16, 1930, on the payment of an additional premium of $28.75 by libelants to respondent, and with knowledge of the location of the motorboat, the said respondent made the following indorsement on said policy: "It is understood and agreed that this insurance covers this vessel whilst at Brooklyn, N. Y. and/or Syracuse, N. Y., and that this policy is extended for a further period of one month, or until June 12th, 1930, Noon."

Shortly after the arrival of the motorboat at Brewerton, further repairs were made on the engines, which were taken out and reinstalled. Thereafter a trial trip was made, Lewis Rapp, an employee of the libelants, piloting the boat, and Capt. Brown, another employee of the libelants, and the mechanic who had made the repairs being on board.

The noise in the engine, which had been the cause of the taking out at Brewerton, was still heard, but the mechanic told them to take it easy, and that by running it slow gradually the noise would disappear.

After being out about three-quarters of an hour or more, the boat was taken back and tied up at the libelants' dock.

The witness Rapp was to take another boat of the libelants known as the 36-footer, a single cabin boat, to Ithaca, for the Cornell University boat races to be held there, and on May 20th he started in that boat from Brewerton bound for Ithaca.

Capt. Brown took the No. 304 and went ahead. They ran very slowly from Brewerton to Baldwinsville, where they tied up for the night.

The next morning, about 9 or 9:30 o'clock, Mrs. Brown, Mrs. Valentine, and Miss Mary Lee Valentine boarded the No. 304, and the boats proceeded as before, the No. 304 leading during that day, and in the evening docked at Cayuga village behind the breakwater, at the end of Cayuga Lake.

The next day they proceeded down the lake to Ithaca.

On Saturday morning, May 24th, both the 36-footer and the No. 304 were in the canal at Buffalo Street bridge, Ithaca.

A Mr. Reamer and his chauffeur came down, and on the orders of Capt. Brown the witness Rapp took them out in the 36-footer for a demonstration.

Capt. Brown had placed the No. 304 next to the Students' Transfer and made arrangements for the gas wagon to come down and fill up the tanks of the No. 304.

The tanks of the No. 304 were filled with gas.

When the witness Rapp returned, the No. 304 had suffered from an explosion. He turned the wreck of the No. 304 around facing her the other way, so that when she was pulled out she would not interfere with the Students' Transfer.

A number of those on board the No. 304 were injured by the explosion.

A survey was held of the No. 304, and the salvage value of the No. 304 was fixed at $1,-000, the surveyor for the respondent signing without prejudice, for account of whom it may concern, and that his agreement to the foregoing measure of salvageable value was not to be construed as an admission of liability under any policy of insurance which might pertain to the property involved.

In February, March, and April, 1930, Capt. Brown offered to persons acting on behalf of Cornell University Athletic Association the use of a 40-footer which he expected to have by the time of the races.

The No. 304 was taken to Ithaca for demonstration, not on a trial trip.

From the facts as found, there is no liability established on the part of the respondent.

 The contract of insurance in this case consists of the policy and all the indorsements, and must be construed by the court as a whole liberally to accomplish the intent of the parties under the peculiar circumstances of the case, and not on the basis of the meaning customarily ascribed to certain words in exclusively builders' risks policies, and with the purpose of preventing a forfeiture, if possible. Wright v. Ætna Life Ins. Co. (C. C. A.) 10 F.(2d) 281, 46 A. L. R. 225; Ætna Ins. Co. v. Houston Oil & Transport Co. (C. C. A.) 49 F.(2d) 121; Marine Ins. Co. v. McLanahan (C. C. A.) 290 F. 685; Fireman's Fund Ins. Co. v. Globe Nav. Co. (C. C. A.) 236 F. 618; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408.

The policy as originally written did not cover voyages but only trial trips within 100 miles of Brooklyn, N. Y.

 This did not mean demonstrations as distinguished from trial trips, which were to test out the running of the boat to ascertain if she was satisfactorily completed, but such trial trips did not lose their character as trial trips simply because a prospective purchaser or purchasers were taken on such trips. The test, as I see it, was that the trips that were covered were those taken to test the boat to determine if she was satisfactorily completed, and not pleasure trips or trips to demonstrate the boat to secure a purchaser.

No damage was sustained while the boat was at Brooklyn, N. Y., and no question of the termination of the policy while the boat was at Brooklyn, N. Y., is presented, as the policy was continued in force by subsequent indorsements.

By the indorsement of May 6, 1930, the nature of the contract was changed, as that indorsement was not for a trial trip within 100 miles of Brooklyn, N. Y., but for a trip by water from the yard of the assured via any port or place to Syracuse, N. Y., sailing on or about May 6, 1930, against the perils covered by the policy.

On the evidence I am satisfied that the boat never went to Syracuse; on the contrary, the evidence of the witness Rapp is that she went to the boathouse and dock of the libelants at Brewerton, 14 miles from Syracuse.

This was obviously the end of the trip covered by that indorsement. While the boat was at that dock, the libelants' representative caused repairs to be made to the engine of the boat, and, while the boat was at Brewerton, the libelants procured the last indorsement showing that the trip to Syracuse had been completed.

 It is not of moment that the indorsements in question may have been prepared by the broker of the libelants, as they were accepted by the respondent and must be construed more strongly against it. Bushey & Sons v. American Ins. Co., 237 N. Y. 24, 142 N. E. 340.

On the trip and between Brooklyn and Albany the No. 304 suffered damage by striking a submerged object, notice of which was given to the respondent, and for which the respondent subsequently made payment.

On May 16, 1930, while the No. 304, to the knowledge of libelants, was lying at Brewerton undergoing repairs to her engine, and to

the knowledge of the respondent she had been permitted to make a trip to Syracuse, the respondent for a further consideration by way of additional premium made the following indorsement on said policy: "It is understood and agreed that this insurance covers this vessel whilst at Brooklyn, N. Y. and/or Syracuse, N. Y. and that this policy is extended for a further period of one month, or until June 12, 1930, Noon."

 In the light of the knowledge possessed by both libelants and respondent, it seems to me that the parties could have intended by that indorsement but one thing, and that was to substitute Syracuse for Brooklyn as the base from which the area in which trial trips were to be covered by the policy.

In other words, Syracuse was to be substituted for Brooklyn, N. Y., the place of construction, or held covered as provided in the policy.

No evidence was offered by the respondent which in any way negatives that construction.

Such a construction gives a meaning to all of the provisions of the policy and indorsements, and it was for this that the additional premium was paid.

The boat having been allowed to make the trip from Brooklyn to Syracuse, the last indorsement would be meaningless, unless it be held to cover trial trips to determine whether it had been satisfactorily completed, and, as the boat received damages on the way, as the result of which or of the repairs made there was a knock in the engine which was repaired at Brewerton, the parties by such last indorsement intended to cover any trial trip or trips necessary to determine if the boat was satisfactorily completed. The indorsement, however, did not extend coverage to demonstration or pleasure trips.

The trip of the mechanic, the witness Rapp, and Capt. Brown was such a trial trip.

A trip to Baldwinsville and return might have been such a trial trip, if taken for the purpose of determining if the engine repairs were satisfactory, even though the mechanic had so reported them and said all that was needed was to run the boat easy for a time.

This leaves for consideration but one question, viz., What was the nature of the trip the No. 304 was on at the time of the explosion?

The trip with Capt. Brown and his wife and their guests on board, from Baldwinsville to Ithaca, was not a trial trip, but was taken to demonstrate the boat, and to enjoy the boat races of Cornell University.

This is shown by the use made of the No. 304 while at Ithaca, as appears by the testimony of the witness Rapp. A trip for demonstration and pleasure was not a trial trip, and was not covered by the policy of insurance in question.

I find as conclusions of law:

That by the policy of insurance in question issued by the respondent to the libelants upon the motorboat Wheeler Shipyard Hull No. 304, the said motorboat after May 16, 1930, when she was at Brewerton, was covered on trips only that were trial trips taken for the purpose of determining if the boat was satisfactorily completed.

That the trip of the motorboat on which she was destroyed by explosion was not a trial trip, but was a trip taken to demonstrate the boat for possible purchasers at the Cornell University boat races at Ithaca, and to enjoy the races.

That the libelants have failed to show by a fair preponderance of the evidence that the said motorboat No. 304 was covered by the said policy of insurance at the time of the explosion, or that any loss therefor of the libelants is payable to them from the respondent under the terms of said policy.

The respondent is entitled to a decree against the libelants dismissing the libel, with costs.

A decree may be entered in accordance with this opinion.

Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.