Per Curiam.
The policies described the subject of the insurance in the following terms : “On vessel, the body tackle and apparel, and other furniture of the good steamship called the Falcon. . . The said vessel, tackle, etc., hereby insured, are valued at $20,000, on hull, tackle, apparel and other furniture; $20,000 on. boilers and machinery. ” The two valuations indicate separate subjects of insurance, and the contract is to he enforced distributively as to the particulars under each valuation con *455 sidered as a whole (Deidericks v. The Commercial Ins. Co. of N. Y., 10 Johns. 234; Wallerstein v. The Columbian Ins. Co., 44 N. Y. 204 ; Merrill v. Agricultural Ins. Co., 73 Ib. 452).
The policies, as usual, contained many clauses intended to be applied to different contingencies that might arise, according to the particular insurance and to the different circumstances of particular losses. Such of them as were in print were subjected to restriction or modification by such as were written, when the printed matter and the written matter were not congruous. It was provided in printing that in case of claim for loss or damage, c ‘ the usual deduction should be made of one-third new for old, etc., and that if a technical total loss be claimed, similar deductions shall be made from the estimated repairs, and unless the net cost thereof would exceed a moiety of the insured value of the vessel in this policy, after making such deductions, the loss shall be partial only.” This clause does not determine when a valid claim may be made for a technical total loss. The rest of the policy, and particularly the "written clause, c ‘ free from particular average, ” fixes what claim may be made. That under this claim a constructive total loss cannot be claimed is generally declared to be the law (2 Pars. Mar. Ins. 111, et seq. and notes). This is founded upon reason. The rule as to technical or constructive total loss was made from a necessity there was, many times, of determining whether, when some part of the thing insured remained after a loss, it could be correctly held that there was actual total loss. If what was left was inconsiderable as to any of the uses or advantages of the subject when whole, it would only be literally true that the loss was not total, while really the owner would be more likely to abandon the remnant, than try to save it. How large or great a quantity might be left and yet there be a total loss was determined, not by attempting to ascertain the value of the remnant directly, but by ascertaining what the loss was ; namely, the cost of repair after the deduction of new for old, and if the cost *456 were more than one half of the value of the thing insured, then it was deemed that the remaining half, represented by the actual remnant, was not so considerable that its existence should prevent a legal conclusion that there was actual total loss. It was not denied that in such case the insurers paid for what was only a partial loss, indemnifying themselves by taking the remnant. In many cases there was no doubt that there was no total loss actually. If the parties contract against such a method of adjustment, the law will carry out their intent. The clause against particular average or partial loss, means that the insurer will not pay what is in fact a partial loss, under any circumstances, and therefore not for a constructive total loss, for the latter is really a payment for a partial loss, and for a constructive value of the remnants. There is no such thing as a constructive partial loss (2 Par. Mar. Ins. 111, et seq. and notes).
The inquiry as to the vessel, tackle, apparel and other furniture, is, whether there was a total loss of them. The case suggests that in some circumstances there could not be total loss, if anything separable from the rest of the particulars, under the valuation which was applied to them in the aggregate, had been saved in specie. This view of the possible case was not presented to the court on the trial or on this appeal, and probably the facts show that no separable part was in fact saved. When the vessel sank, and while she was on the bottom, and also when raising, the loose things were swept or fell from the vessel. The inquiry is to be confined, therefore, to the total loss of the vessel. The mere fact that the vessel sank in six fathoms of water, did not make her a total loss. That would depend upon the surrounding circumstances. It was good weather. She sank in the Chesapeake Bay, when the vessel had been out of Baltimore about six hours. The wrecking company began work on her within ' a very short time, and she was. lifted without difficulty. Nevertheless, the circumstances that have been adverted to, do not prove that she was not a total loss. The success *457 in raising her may have disclosed the fact, that the vessel was no longer a vessel, in specie; that there was not mere deterioration, but such a dissolution of the continuity of the materials generally that were left, that there were only deteriorated materials for part of a vessel, but no vessel. The learned judge on the trial found that there was practically (by which is to be understood actually) a total loss. The evidence for this forbids that it shoiild be disturbed. The collision cut the vessel down to the water’s edge, where the schooner struck her. The judge found in particular, that by the collision and the sinking,'the steamer’s smoke-stack, mizzen mast, all the sails except the square-sail, all the deck-houses, and the furniture, and .appointments of the deck-houses, were carried away. The planking on the port side, extending about one hundred feet from the stern, was stripped off and carried away with the frame timbers and the between-deck waterways. The upper deck and the deck frame on the same side, and the between-deck water-ways were broken. The windlass side let was started. All the frame timbers of the ship, and all the planking which were not carried away, were started and loosened. The evidence in general, that is not particularly noticed by the judge, is to be construed in favor of this finding. One witness, no doubt credible, swore that the bottom of the vessel remained sound. The judge refused to find that this was the fact, in the words of the witness. His refusal cannot be reversed, for he perceived, better than an appellate court can, what in view of other established facts, the real sig- • nificance of the phrase used by the witness was. It cannot be affirmed that the testimony shows that what was left had the form of a vessel. It may have had the form of part of a vessel. "What was left was afterward used as a coal barge. This fact does not show that the materials left were used as a vessel to make the coal barge. The materials may have become so far separated in their joints and relative positions, as to no longer constitute a part of a vessel, and yet in that state be used as materials *458 for a coal barge, by means of additional appliances which are not disclosed. There having been an actual total loss, there is no necessity of ascertaining whether an abandonment was made, so far as the vessel is concerned.
The facts concerning the boiler and machinery might lead to a different result as to them. They were raised with the wreck of the vessel and saved. The learned judge found that the “ engine was badly rusted, the rods bent and twisted, and its parts disarranged,” and further, “ that the machinery was removed from the wreck and the purchaser of said wreck cut down the sides of the hull where the same had been torn away by reason of the collision . . . and that the cost and expense of removing said machinery exceeded the value thereof, after it had been so removed, and that said machinery was of no value as machinery, but it only was valuable as old iron.”
It is unnecessary to make any reference to the loss upon the boiler and machinery farther than to say that as to them, other propositions than such as have been already adverted to, would perhaps call for examination. The policy provided that the insurers should be hable for loss on them only when occasioned by stranding. The learned counsel for appellant does not claim that if there were an actual total loss of the vessel, the defendants would not be liable for the gross sum insured, subject to deduction on other grounds.
The defendant claimed that there should be deducted from the amount claimed as loss, the amount of the premium notes. This being a valued policy, which in case of total loss, liquidated the damages, the premium notes might be set-off (Columbian Insurance Company v. Black, 18 Johns. 149). In this case, however, the contract itself limits the amount which the plaintiff may recover, by stipulating that the premium notes, if unpaid, shall first be deducted. Any part of a recovery that should represent the amount of the premium notes, would be unauthorized by the contract. The claim as to the premium *459 notes it was not necessary to set up in the answer by way of set-off or counter-claim. The mere statement that such notes had been given and remained unpaid, was an assertion of a fact that put in issue the claim of the defendant to a part of the damages. The learned counsel for the respondent asserted on the argument that these notes were for other policies besides the present. It does not seem that there is any testimony for this. The amount of the promissory notes in evidence corresponds with the amount of premiums noted on the policies. The amount of the notes given for the premiums must be deducted from the recovery.
There was another claim for a deduction which the defendant did not make in the answer, upon which the action was tried. It was in the nature of a counter-claim for money had and received in a proceeding in which the plaintiff recovered damages against the schooner that struck the vessel in question, sinking her, and which was the loss under the policy. After the trial the claim was made in a supplemental answer. The leave to serve this was accompanied with a denial of the part of the motion which asked that the judgment and trial be opened, to allow proof of the matters set up in the supplemental answer. The plaintiff appeals from this order. The defendant does not, but says that as the plamtiff has not replied or demurred to the counter-claim, there should be a deduction from the amount of the judgment. As there has been no proceeding taken below on the supplemental answer, there is nothing to review, or that may be considered in connection with the present judgment. It stands like any other unanswered pleading, and some proceeding must be had upon it for review in this court. In order to prevent a litigation of very doubtful advantage to the defendant, it is best that the order granting leave to serve supplemental answer, be reversed, without costs.
The judgment should be modified by deducting the *460 amount of the premium notes and interest, and as modified, should be affirmed, without costs of appeal to either party.