AMERICAN S. S. CO., Limited, v. INDEMNITY MUT. MARINE INS. CO., Limited.

SAME v. MANNHEIM INS. CO.

(District Court, S. D. New York. April 27, 1901.)

1. MARINE INSURANCE—SEPARATE VALUATIONS OF HULL AND MACHINERY.
Where the hull and machinery of a steamship are separately valued in a policy of marine insurance, the parts thus separated are to be treated as distinct insurances, to be applied to each part as though each were insured by an independent policy.

2. SAME—PARTIAL LOSS—DEDUCTIBLE AVERAGE.
A marine policy on a steamship contained two separate valuations, one including the "hull, tackle, apparel, furniture, stores, outfit, fittings, electric light plant, and dynamo," and the other the "engines, propeller wheel or wheels, boilers, and machinery." It contained clauses providing that, "in the event of particular average, the assurers only to be liable for the excess of one-half per cent. upon the entire value," and "average payable on each valuation as if separately insured, or on the whole." *Held,* that the effect of the latter clause was to entitle the assured to treat the policy as a single policy on the whole, or as two separate policies, for the purpose of computing the deductible average in case of a partial loss, and that in case of a loss by injury to the hull in collision, which did not affect any of the items included in the second class, the half per cent. deductible under the franchise clause should be computed only on the amount of the first valuation; the words "entire value," as used in the first clause, having reference in such case to the class of which the hull formed one item, as the subject of separate insurance.

3. SAME—CONSTRUCTION OF POLICY.
Ambiguities or contradictions in different clauses of a policy, in the absence of any controlling indications of intent, are to be resolved against the insurer.

In Admiralty.     Actions on policies of marine insurance.

Wing, Putnam & Burlingham, for libelants.
Butler, Notman, Joline & Mynderse, for respondents.

BROWN, District Judge.     The above libels were filed to procure a judicial construction of the so called "franchise" clause in two time policies of marine insurance upon the steamship John W. Gates, providing that "in the event of particular average, the assurers only to be liable for the excess of one-half per cent. upon the entire value."

Each policy contained two separate valuations; one upon the hull, tackle, etc., and another upon the engines, machinery, etc.; and a decision is sought upon the question whether the computation of the deduction of the one-half per cent. should be made upon the entire aggregate of valuations contained in the policy, or only upon the entire separate valuation of the hull, tackle, etc., to which alone the damage happened. The question involved affects, as it is said, a great number of policies issued during the year 1900 in nearly identical terms.

The policies in question ran from April 23, 1900, to April 20, 1901. The amount insured in the Indemnity Company was £3,000; in the Mannheim Company $10,000. Both were valued policies, in which the hull, tackle, etc., were valued at $260,000, and the engines, machinery, etc., at $79,500, or the equivalent of those sums in pounds sterling.

A few weeks after the insurance was effected, the steamer through collision sustained damage to the amount of $8,730.65 to her hull alone, the engines, etc., not being injured. By the above and other similar policies the steamer was fully insured, and in all the policies the valuations were the same.

In adjusting the whole loss upon all the policies, the adjusters deducted $1,300 only, that is, one-half of 1 per cent. computed upon the agreed value of the hull, tackle, etc., to which class alone the damage was done, treating each valuation as if separately insured by an independent policy, pursuant to one of the clauses in the policies. The defendants contend that under another clause in the policies, the one-half per cent. should have been computed at $1,697.50, that is, upon the entire amount of both valuations, to wit, upon $339,500.

If the provision for a deduction of "one-half per cent. upon the entire value" were considered without reference to prior adjudications as to the effect of separate valuations of different parts of the subject assured, and without reference to any other clauses in the policy, the half per cent. "franchise" (freedom from liability) might naturally be computed upon the aggregate of all the valuations stated in the policy, as being the "entire value" that was intended by the franchise clause.

The practice of separately valuing different parts of the ship has, however, been long in use in marine policies, and numerous decisions have established the rule that the parts thus separately valued, are to be treated as distinct insurances, and the policy applied to each part as though each were insured by an independent policy. Emerig, Ins. c. 17, § 8; Phil. Ins. § 1768; Gow, Mar. Ins. pp. 206, 207; Deidericks v. Insurance Co., 10 Johns. 234, 235; Merrill v. Insurance Co., 73 N. Y. 453, 463; Woodward v. Insurance Co., 32 Hun, 365, 373.

In Merchants' S. S. Co. v. Commercial Mut. Ins. Co., 19 Jones & S. 444, where there were separate valuations on "hull, tackle," etc., and on "boilers and machinery," it is said:

"The two valuations indicate separate subjects of insurance, and the contract is to be enforced distributively as to the particulars under each valuation considered as a whole."

In Oppenheim v. Fry, 3 Best & S. 873, 5 Best & S. 348, where there were similar separate valuations on hull and machinery, Earl, C. J., said that the same principle applies as if the two subjects had been insured in separate instruments, in different offices.

Cockburn, C. J., declared the case to be "the same as if there were two policies, one on the hull and the other on the machinery."

Mr. Justice Blackburn in the same case said:

"The meaning of the contract I understand to be this: The assurance is in one sum upon the whole, but the parties agree that for all purposes of average it shall be considered as if the $14,000 upon the hull was insured in one policy

and the £8,000 upon the machinery in another policy and by another set of underwriters."

Under this rule of construction, evidently the adjusters' computation would be correct, since upon an insurance by different policies of the two different subjects separately valued, it is manifest that a deduction of "half per cent. on the entire value," would mean on the entire value of the part insured.

The policies contain various clauses which have some bearing on the question presented. In the policy of the Indemnity Company (that of the Mannheim Company being substantially the same) the insurance is declared to be—

"Upon the hull, tackle, apparel, furniture, stores, outfit, fittings, electric light plant including dynamo, and also the engines, boilers and machinery, of the good steamer called the John W. Gates."

"The said ship, etc., for so much as concerns the assured, by agreement between the assured and assurers in this policy, are and shall be valued as follows:

(a) "Hull, tackle, apparel, furniture, stores, outfit, fittings, electric
     light plant and dynamo ................................. £53,608
(b) "Engines, propeller wheel or wheels, boilers and machinery.. 16,392
                                                                  ————————
                                                                  £70,000

(c) "In adjusting and determining any and all losses, damages and amounts under this policy, the valuation stated herein shall be considered the value of the vessel."

(d) "Average payable on each valuation as if separately insured, or on the whole."

(e) "The right of abandonment under this policy as for a constructive total loss shall not exist unless the loss exceeds 75% of the value in this policy."

(f) "Warranted free from particular average under three per cent., unless the ship be stranded, sunk, burnt, on fire, or in collision, or in contact with any substance other than water; and in the event of particular average the assurers only to be liable for the excess of one-half per cent. upon the entire value."

Clause (d) above quoted seems expressly to re-enact, as between the parties to the contract, the rule of construction above quoted, to be availed of by the assured, at his option, as though insured by separate policies; while at the same time the privilege is given to the assured to treat the policy as a single policy "upon the whole," whenever it is for his interest, as it sometimes is in connection with the three per cent. warranty (f), to do so.

A deduction computed upon the whole aggregate values of (a) and (b) would here be incompatible with clause (d), since that provides in effect that at the assured's option the average or loss shall be paid on each valuation as if separately insured; and if the deduction is made upon both valuations when the loss has been incurred upon only one of them, as in this case, it is manifest that the assured will not receive payment of his average as if "each valuation was separately insured"; he will receive a less sum, in violation of this provision.

The defendants on the other hand, invoke clause (c), which declares that in adjusting all losses, damages and amounts under this policy, the valuation stated herein shall be considered the value of the vessel; and the use of the word "valuation," in the singular number, is claimed to indicate that the value of the vessel is to be taken as a

whole in adjusting all amounts and losses payable under the policy. This clause, however, is, I think, too general in its character to outweigh 'the more precise and specific requirement of clause (d) as respects the loss payable on each valuation. Clause (c), moreover, has a recognized different purpose and application, viz., in estopping both parties from alleging any different values of the ship than the aggregate named, in cases of over or under insurance, general average or undervaluation. See International Nav. Co. v. Atlantic Mut. Ins. Co. (D. C.) 100 Fed. 304, 316, and cases there cited.

The defendants further contend that the provision for a deduction of "one-half per cent. upon the entire value" in the event of particular average, is an express provision designed to exclude any possible doubt of the insurers' right to make a deduction upon all the aggregate values in case of particular average; and they claim that the words "entire value" are here equivalent to and include the aggregate or whole values named in the policy. But this is not necessarily so. The clause itself does not state what it is of which the "entire value" is to be taken; whether of the whole ship, or of the class of subjects separately valued and insured. Each of the two classes separately insured, (a) and (b), consist of many different subjects. A loss arising under (a) alone, may be on any one of the nine different subjects included in class (a) without loss on either of the other eight; under class (b) the loss may be on the propeller wheel alone, as in The Homeric (D. C.) 106 Fed. 960, without any damage to the other three subjects in class (b); and the deduction upon the "entire value" may thus be properly computed upon the entire value of that class, as distinguished from the value merely of the thing damaged. The words "entire value" may, therefore, be given as appropriate effect by referring them to the value of each class insured, as to the value of both classes; and the moment it is held that the policy must be treated as providing distinct insurances on each class, "as if separately insured," as the authorities and clause (d) require, I think the former of the two constructions must be adopted, because that would necessarily be the result of separate insurances. Had the value of the ship been intended, that language would naturally have been used in the policy, or some other equally explicit and unambiguous expression; especially in view of the long-established and well-known construction given to policies containing separate valuations like this. This view moreover, prevents any contradiction of clause (d); and in the construction of contracts, contradictions are always to be avoided if possible.

Even if the clause in question were deemed incapable of any other construction than including the total value of the vessel, inasmuch as that provision would then become directly opposed to clause (d) and contradictory of it, I see no reason why it should be held to prevail over clause (d); on the contrary, as the policy is in the terms prepared and selected by the assurers, ambiguities or contradictions, in the absence of any controlling indications of intent, are to be resolved against the insurers and in favor of the assured. First Nat. Bank of Kansas City v. Hartford Fire Ins. Co., 95 U. S. 673, 678, 24 L. Ed. 563; Thompson v. Insurance Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019,

34 L. Ed. 408. Had clause (d) been intended to be limited and controlled by clause (f) this qualification should and would naturally have been inserted in clause (d).

The Mannheim's policy contains all the provisions above quoted and several other peculiar provisions; but on consideration I do not think that the latter affect the construction of the clauses above quoted.

The adjustment should therefore be sustained, and decrees ordered for the sums claimed, with interest and costs.