IMPERIAL ASSUR. CO. v. LIVINGSTON et al., and eight other cases.

Nos. 8857–8865.

Circuit Court of Appeals, Eighth Circuit.

April 6, 1931.

Rehearing Denied May 18, 1931.

Samuel H. Liberman, of St. Louis, Mo. (Harry C. Willson, of St. Louis, Mo., on the brief), for appellants.

John R. Turney, of St. Louis, Mo. (Carter, Jones & Turney and Lewis & Rice, all of St. Louis, Mo., on the brief), for appellees.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

STONE, Circuit Judge.

These are appeals in nine cases from separate judgments according recovery on separate insurance policies.

In five of the cases, Orville Livingston, trustee in bankruptcy, and Title Guaranty Trust Company, trustee, were plaintiffs; in three of the cases, Orville Livingston, trustee in bankruptcy, and Missouri State Life Insurance Company and American Investment Company were plaintiffs, and in one Orville Livingston, trustee in bankruptcy, was the sole plaintiff. Each suit was upon a policy issued by a different company upon the same property and covering the same loss. Pursuant to stipulation, the cases were consolidated and tried upon an agreed statement of

facts with a formal waiver of jury. The appeals are separate, but all cases are brought here upon one bill of exceptions and are briefed and argued together.

Prior to June 29, 1927, the Buckingham Realty Company owned and operated a hotel building which was protected by fire insurance policies issued by the various appellants. During this time there were incumbrances upon the building consisting of a deed of trust to Title Guaranty Trust Company, as trustee, to secure a loan by the American Investment Company; a mortgage to the Missouri State Life Insurance Company; and another mortgage to the American Investment Company.

On June 29, 1927, a petition in bankruptcy was filed against the Buckingham Realty Company, and upon the same date Isaac T. Cook was appointed by the bankruptcy court, qualified, and took possession as receiver. There has been no order yet made discharging him as receiver. The company was adjudicated a bankrupt on September 26, 1927. Orville Livingston was elected and qualified as trustee on November 7, 1927. In view of the fact that the receiver was operating the hotel properties at a loss, the trustee was unwilling to take them over without first investigating the incumbrances against the property to ascertain whether they were so great that the properties would become a burden and charge upon the estate. A number of proposals relating to the sale, possession, or disclaimer of the property by the trustee were made to and considered by him, but before he had reached any conclusion and on December 5, 1927, a fire occurred destroying much of the property and causing the losses involved in these suits. On December 17, 1927, an order was made requiring the trustee to accept possession of the property and of the policies of insurance thereon. The receiver remained in actual possession and custody until December 23, 1927.

Immediately upon qualification, the receiver consulted with representatives of the American Company and the Missouri Company, which then held the policies upon the property under standard mortgage clauses, and, with their approval, secured the policies and had some of them indorsed to him as "Isaac T. Cook, receiver for Buckingham Realty Company," and the others canceled and new policies issued to him as above quoted. These indorsed or new policies were returned by him either to the American or to the Missouri companies, with the exception of that issued by the Niagara Fire Insurance Company to him, which latter policy he has retained in his possession. This disposition of the policies accounts for the difference of plaintiffs in these cases.

Six of these policies were so indorsed or so issued prior to November 7, 1927, the date upon which the trustee was elected and qualified. The other three were issued on November 21, 1927, two weeks after election and qualification of the trustee, but while the receiver was yet in actual possession and custody of the property insured.

The main contentions of appellants are as follows: I. That a change in title and interest in the insured property was occasioned by the election and qualification of the trustee, thus avoiding the six policies issued or indorsed to the receiver prior to the qualification of a trustee. II. That after the qualification of the trustee, there was no insurable interest in the property in the receiver, therefore the policies issued to the receiver subsequent to the qualification of a trustee were void from their inception. III. That the sale of the mortgaged debt by the Missouri Company disabled it from complying with the policy clauses permitting the insurers to become subrogated to the rights of the mortgagee and to pay the mortgaged debt, therefore such sale rendered the policies void as to the Missouri Company. As to the lienholders, it is claimed that their failure to notify appellants of the above changes in ownership and in interest affected by the election and qualification of the trustee, rendered the policies void as to each of them on the grounds set forth in I and II above.

I. As to the six policies indorsed or issued to the receiver prior to the appointment and qualification of the trustee, appellants concede that the receiver "as an arm of the court charged with the responsibility for the preservation and protection of the property, had an insurable interest therein." However, they contend that the appointment and qualification of the trustee put an end to the insurable interest of the receiver and constituted a change of title and interest which avoided the policies under their terms.

The provision of the policies in question is as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void * * * if any change, other than by death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise. * * * "

It is conceded that there was no change in "possession" since the receiver had possession until the fire and for more than two weeks thereafter. The question is whether there was any change, within the meaning of the policies, in either the "interest" or in the "title" prior to the fire. The contention is that such change occurred because of and at the time of the election and qualification of the trustee, which occurred prior to the fire.

The supporting argument is that the status of a receiver in bankruptcy and of a trustee are defined in sections 2 and 70a of the Bankruptcy Act (USCA, title 11, §§ 11 and 110 (a), and that the result thereof is that, upon election and qualification of the trustee, the title and the resulting right to possession rested in him and any right or interest of the receiver in the property was thereupon and thereby terminated—thus constituting a change in title and in interest within the meaning of the policies. This requires examination and definition of the status (with resulting legal effects thereof) of such receiver and of such trustee.

In framing the machinery to work out the purposes of the Bankruptcy Act, Congress made use of terms (such as referee, trustee, receiver) which were taken from the body of the general law and which had, therein, already acquired fairly clear meaning and definition. Probably, this was done because the powers and duties of those officials under the act were somewhat analogous to those recognized in existing law. But the importations were of terms or names rather than of definitions; for example, referee in bankruptcy does not mean an officer with the same powers and duties as a referee in equity, and the same is true of trustees and receivers in bankruptcy. The act defines the powers and duties of the officials named therein and it is only where the act is deficient in definition that the analogy becomes useful through the rule that proceedings in bankruptcy are in the nature of proceedings in equity. Bardes v. Hawarden Bank, 178 U. S. 524, 20 S. Ct. 1000, 44 L. Ed. 1175; Lockman v. Lang, 132 F. 1; In re Rochford, 124 F. 182; Swarts v. Siegel, 117 F. 13; Dodge v. Norlin, 133 F. 363; Ogden and Jamison v. Gilt Edge Mines Co., 225 F. 723; Clark v. Johnson, 245 F. 442; Nisbet v. Federal T. & T. Co., 229 F. 644—all in this court. Resort must first be had to the act in order to ascertain, through the definition therein of powers and duties, the real meaning of the terms used therein. To do otherwise results in confusion, if not, indeed, in defeat of the act.

Some introductory observations of a general character as to the purposes and plan of the act and of the places therein of each of these officials will aid in understanding and defining the status of each as to the property of the estate. The broad purposes of the act are to permit (voluntary) or to compel (involuntary) a debtor to turn over all of his property to the court for the benefit of his creditors, to have set aside therefrom his exemptions and to be discharged from further liability to such creditors. The plan by which the above purposes are wrought into results is set forth in the act. Generally speaking and in so far as pertinent to these cases, that plan is as follows: A special class of tribunals (courts of bankruptcy) are created to handle such matters and are given defined jurisdiction deemed adequate for such purposes. In general, this jurisdiction includes power to determine its own jurisdiction and to administer estates within that jurisdiction. The legal order of procedure prescribed is the initiation of the proceeding, the determination that the matter is one for bankruptcy administration, and (if it be such an one) the administration of the estate and the discharge of the debtor.

The place of a trustee is as an important part of the machinery of administration —after adjudication. As the property (except exemptions) is to be administered for the benefit of creditors and (as a part of such administration) the proceeds thereof are to be distributed to them, the creditors are permitted to choose the trustee; the purpose being to thus secure an active agent for the prosecution of the interests of all of the creditors in the estate. But this choice is subject to the approval of the court (through its official representative, the referee); the trustee can, in important matters, act only with approval of the court and he must keep the court fully and frequently advised of his actions as trustee—all of this is because of and emphasizes the fact that he is an officer of the court. Section 47 of the act (USCA, title 11, § 75) defines his duties in some detail but the general scope thereof is well expressed in a portion of that section as being to "collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest." Many provisions as to the status, powers, and duties of the trustee appear in this section (section 47 of the act), in other sections of the act, and in the General Orders, but all

are in aid of the general duties above quoted. His status is governed by his relationship to the parties and to the court. As to the bankrupt, he sets aside exemptions. As to the creditors, he collects, conserves, and distributes the assets. But in all he does, he is subject to control of the court because he is administering property which is placed by the act in custodia legis. His relation to that property is set forth in several sections but principally in sections 47 and 70a, which must be read together. He not only succeeds to the rights in the property of the bankrupt (section 70a), but he has also the rights of a creditor holding a lien by legal or equitable proceedings. Section 47; In re Seward Dredging Co. (C. C. A. 2) 242 F. 225. At the same time, all of his acts relate to administering property in the custody of the court or to bringing property into such custody so that it may be there administered. This situation, as an officer of the court administering property in the custody of the court, is the woof into which all of his status, duties and powers are woven. While the act (section 70a) gives him "title" to the property and while he is vested with the rights, remedies and powers of a creditor holding a legally established lien or unsatisfied execution (section 47), yet he has such title and such rights, remedies, and powers solely to place him in position better to collect into, and to preserve, transfer, and distribute the property in the custody of the court in accordance with the requirements of the act.

■ The status of a receiver in bankruptcy comes about and is as follows: Until there is an adjudication, it is not known whether there will be any administration under the act. Yet the bankruptcy jurisdiction begins with the filing of the petition and it is obviously necessary to secure and protect the property until the adjudication so that it can be administered if bankruptcy is adjudged. Therefore, the property is regarded as in custodia legis for such purposes from the filing of the petition. Lazarus v. Prentice, 234 U. S. 263, 266, 34 S. Ct. 851, 58 L. Ed. 1305; Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 649, 36 S. Ct. 466, 60 L. Ed. 841; Bailey v. Baker Ice Machine Co., 239 U. S. 268, 276, 36 S. Ct. 50, 60 L. Ed. 275; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Acme Harvester Co. v. Beekman, 222 U. S. 300, 307, 308, 32 S. Ct. 96, 56 L. Ed. 208. To protect this custody, the act (section 2) gives bankruptcy courts jurisdiction to "appoint receivers or the marshals * * * in case the

courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." Such a receiver takes no title to the property, because the title remains in the bankrupt until the adjudication (section 70a of the act; Robertson v. Howard, 229 U. S. 254, 260, 33 S. Ct. 854, 57 L. Ed. 1174; In re Baum, 169 F. 410, 412, this court), but he is a custodian in possession. Under another provision of section 2 he may, as here, be empowered by the court to operate the property. He is an officer of the court in charge of property in the custody of the court. Murphy v. John Hofman Co., 211 U. S. 562, 568–570, 29 S. Ct. 154, 53 L. Ed. 327; also see Union Nat. Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 236, 10 S. Ct. 1013, 34 L. Ed. 341.

From the foregoing, it is evident that the property is at all times in the custody of the court; that the receiver and the trustee are officers of the court for the purposes of handling such property in accordance with the directions of the court within the act; and that their relation to the property is purely and solely in such official capacities.

■ In the preservation of such property, it is obviously proper for either of such officials to insure it against loss. Such insurance is in no sense for the benefit of such officers, who derive no personal benefit whatever therefrom. It is for the preservation of the value of the property to those who may, in the administration of the estate, be found to be entitled to it.

■ When these policies were issued or indorsed to "Isaac T. Cook, Receiver for Buckingham Realty Company," the interest insured and intended to be insured was not of Cook, personally, because the designation of his official title and representative capacity forbade such, but it was and could have been only the interest of those entitled to share in the estate. Of course, the companies might have limited their contract to the protection of such interest only while it was in the keeping of a particularly named receiver but such a construction of these policies is forbidden by Thompson v. Phenix Ins. Co., 136 U. S. 287, 297, 10 S. Ct. 1019, 34 L. Ed. 408. In that case, the policy was to "E. S. Kearney, receiver for Holladay v. Holladay." The court (page 297 of 136 U. S., 10 S. Ct. 1019, 1023) said: "If an insurance company intends its policy to mean otherwise [than to cover succeeding receivers], it must express that intention more distinctly than was done

by the defendant. If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because those instruments are drawn by the company."

That case also governs the contention that the change of custody from the receiver to the trustee avoided the policies. The receiver and the trustee are, in this respect, merely successive officers of the same court as to the same property in that court and for the same beneficiaries. In principle, the situation, is in this regard, entirely analogous to successive chancery receivers. In the Thompson Case this same issue was presented concerning successive chancery receivers, and the court (page 297 of 136 U. S., 10 S. Ct. 1019, 1023) said: "But in our judgment the above clause of the policy does not necessarily import that a mere change of receivers would work a change either in title or possession. The title to property in the hands of a receiver is not in him, but in those for whose benefit he holds it. Nor in a legal sense is the property in his possession. It is in the possession of the court, by him as its officer. Wiswall v. Sampson, 14 How. 52, 65 [14 L. Ed. 322]; Heidritter v. Elizabeth Oil Cloth Co., 112 U. S. 294, 304, 5 S. Ct. 135 [28 L. Ed. 729]; Chicago Union Bank v. Kansas City Bank, just decided, 136 U. S. 223 [10 S. Ct. 1013, 34 L. Ed. 341]. So that, where a policy runs to a receiver in a designated suit, a mere change of receiver does not involve a change in title or possession."

Since these policies were insurance of the beneficiaries and not of the official and because a change in such official is not a change of title or interest, this contention is not well founded and the policies are enforceable.

II. As to the three policies issued after the election and qualification of the trustee, the contention is that the insurable interest of the receiver ended upon the election and qualification of the trustee and, therefore, these three policies were void from their inception. The question is one of "insurable interest."

From what has been said above it is clear that the receiver is designed by the act as a mere temporary conservator of the property and business pending the time when it can be turned back to the owner, if the adjudication is denied or when it can be turned over to the regular administrative officer provided by the act—the trustee—if adjudication results. The act clearly defines and limits this by providing that receivers may be appointed to take charge of the property "until it [the petition] is dismissed or the trustee is qualified." Section 2 of act, USCA, title 11, § 11. The same section authorizes the business to be conducted by receivers "for limited periods." Other sections (cited above) place the title in the trustee upon qualification. However, the act should always be construed in a way to carry out its purposes and to care for the situations created by it. Where a receiver has been appointed and is in possession of the property when the trustee qualifies and, perhaps, with even greater emphasis where the receiver has been and is at that time conducting a going business of the bankrupt, a situation is created (under the act) which, in the nature of things, requires certain acts and procedure to end the custody and activities of the receiver and actually to begin those of the trustee. This is so because the property is in the actual care and custody of the receiver and must be so until it passes into the actual care and custody of the trustee. The receiver cannot walk away and leave the property the moment the trustee qualifies. He has duties until the property is actually turned over. While the act makes no express provision, the nature of the situation and the purposes of the act require that there be no hiatus between the actual care and custody of these two officials. Until there is delivery of actual possession by the receiver or a taking of actual possession by the trustee, the receiver has such custody and it is his duty to protect the property in that custody. This responsibility and attendant liability result, necessarily, in powers adequate thereto. Such responsibility, liability and powers determine the status of the receiver. As to perishable property, the power to protect includes anything reasonably suitable or necessary to afford such protection adequately. Certainly, insurance is a usual and proper means of protection. Until the custody is actually out of the receiver, he has the power to protect such property by insurance. The record here shows no actual possession by the trustee until after this fire and loss. The trustee was unwilling to take over the possession and operation of this property (then being operated by the receiver) until he could determine whether such property, because of incumbrances and running expenses, would be burdensome. At the time these three policies were issued to the receiver, he was in actual possession and was actually operating the property and he was so doing under the orders of the court and the trustee was re-

fraining from possession. In this situation, the receiver had ample power and it was his duty to protect this property by insurance. Where an officer has actual possession and custody of property which it is his duty to protect and conserve, he has a sufficient insurable interest to afford such protection. This contention as to these three policies is not well founded.

Since there was no change of interest or title, within the meaning of the policies, by the election and qualification of the trustee, there was no legal need for the lienholders to notify the insurers. Therefore, the contention that such lienholders have lost any rights because of failure to give such notification is not sound.

III. It is also urged that the policies on which the Missouri State Life Insurance Company had union mortgage clauses became ineffectual and unenforceable because of its assignment of the trust deed to the American Investment Company after the loss and before suit. The clauses are as follows: "Loss, if any, payable to Missouri State Life Insurance Company, as mortgagee (or trustee) as such interest may appear. * * * On payment to such mortgagee (or trustee) of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner no liability existed, it shall, to the extent of such payment, be subrogated to the mortgagee's or (trustee's) right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's (or trustee's) right to sue; or it may pay the mortgage debt and require an assignment thereof and of the mortgage."

There is neither pleading nor proof that the companies have offered to pay the loss and have demanded assignment, nor is there either pleading or proof of any offer to pay the mortgage debt, or of any demand that an assignment of the mortgage be made. The most that can be gathered from the record is that the appellants claim that the appellees are not in position to perform certain provisions of the contract which the appellants have indicated no desire to have performed. This clause does not prohibit the mortgagee from selling and assigning its debt, with its rights under the policies, particularly after the loss had occurred. This court has held that: "Unless expressly prohibited by statute, all ordinary business contracts, which are not necessarily personal in character, are assignable." Iowa Bridge Co. v. Commissioner of Internal Revenue (C. C. A.) 39 F.(2d) 777, 780.

Another answer to the argument on this matter is that, apparently, it presupposes that the policies were void as to the trustee. As we hold, however, that the policies even as to the trustee are valid, there is no right of subrogation and no right of assignment involved in these cases. Sun Ins. Office of London v. Heiderer, 44 Colo. 293, 99 P. 39; Hare v. Headley, 54 N. J. Eq. 545, 35 A. 445; Traders' Ins. Co. v. Race, 142 Ill. 338, 31 N. E. 392.

The judgment in each of these cases should be, and is, affirmed.