WARD, TRUSTEE *v.* CITY DRUG CO., INC.

5-2800                                    362 S. W. 2d 27

Opinion delivered November 26, 1962.

*Ward & Lady* and *Penix & Penix,* for appellant.

*Kirsch, Cathey & Brown,* for appellee.

ED. F. McFADDIN, Associate Justice. The real issue to be decided on this appeal is whether certain of the appellees are entitled to acquire eighty shares of stock in the City Drug Company for $21,703.31. The Lower Court so found; and appellant challenges that finding. The appellees are City Drug Company, Inc., A. H. Maddox, Rex N. Moore, Solon McGaughey, Omer E. Bradsher, and Jimmy C. Dodd. The real appellant is Lee Ward, Trustee in Bankruptcy of Dr. E. D. McKelvey, Bankrupt.[1]

Dr. McKelvey, along with the appellees, Jimmy C. Dodd and Drs. Maddox, Moore, and McGaughey, were the

---

[1] Dr. E. D. McKelvey appears by his attorney to support the position of the appellant. The First National Bank of Paragould appears by its attorneys to protect the undisputed claim of the Bank; but we style Lee Ward, Trustee in Bankruptcy, as the appellant.

only stockholders in the corporation styled City Drug Company, Inc. in Paragould, Arkansas, which, as its name implies, was engaged in the retail drug business. Dr. McKelvey owned eighty of the 240 shares of stock in the corporation;[2] and his stock was pledged to the First National Bank of Paragould to secure a note of $9,500.00. Prior to January 1, 1961, Dr. McKelvey was a partner with Drs. Maddox, Moore, McGaughey, and Bradsher in the general practice of medicine; but Dr. McKelvey became financially involved and the partnership was dissolved by signed agreement on January 9, 1961. Thereafter, Dr. McKelvey continued to practice as an employee of the other named doctors at a salary of $1,000 a month, and they were also to pay him $396.94 per month for twenty months for his interest in the previous partnership.

In 1961 several creditors, who had obtained judgments against Dr. McKelvey for sizable amounts, had writs of garnishment served, not only on Drs. Maddox, Moore, McGaughey, and Bradsher, but also on the City Drug Company; and because of these garnishments the said garnishees (present appellees) on May 29, 1961, filed Case No. 8574 as a complaint in equity and bill of interpleader, naming the said judgment creditors and Dr. McKelvey as defendants, and praying court instructions as to the payment of the garnished funds. The First National Bank, because of the pledge to it by Dr. McKelvey of his eighty shares of stock in the City Drug Company, was brought into the case as third party defendant by one of the judgment creditors.

While the aforementioned suit No. 8574 was pending, the City Drug Company and the other appellees who were stockholders in the corporation, attempted to pay Dr. McKelvey's $9,500.00 note to the First National Bank and obtain from the bank Dr. McKelvey's stock certificate for eighty shares of stock in the Drug Company. This effort was because of Bylaw No. 1 of the Drug Company, and an agreement signed by Dr. McKelvey, as hereinafter to be

---

[2] Dr. Maddox owned eighty shares; Jimmy Dodd owned forty shares and managed the drug company; Dr. Moore owned twenty shares; and Dr. McGaughey owned twenty shares.

discussed. On June 22, 1961, the Bank declared Dr. McKelvey's $9,500 note due and made demand for payment. Dr. McKelvey then, on June 30, 1961, filed action in the Circuit Court to enjoin the Bank from transferring the stock certificate to the present appellees; Dr. McKelvey obtained a temporary injunction; and this law action was later transferred to the Chancery Court and became Case No. 8604 therein.

With cases Nos. 8574 and 8604 in the status mentioned, Dr. McKelvey was adjudicated a voluntary bankrupt on July 31, 1961. The present appellees filed an amendment to their pleadings on September 6, 1961, suggesting such bankruptcy and still claiming their right to acquire the McKelvey stock because of Bylaw No. 1 and the agreement signed by Dr. McKelvey. Hon. Lee Ward was duly appointed Trustee in bankruptcy of Dr. McKelvey, and was authorized to intervene in the pending suits, which he did by pleading on October 12, 1961. The two cases Nos. 8574 and 8604 were consolidated and tried; and from that trial, there is this appeal. The position of the Trustee in bankruptcy was, and is, that the McKelvey stock in the Drug store was worth $48,000.00, which was far more than the $21,703.31 which the appellees were offering to pay. The Trustee insisted that the 80 shares of stock should be sold at public auction, the Bank paid in full, and the balance paid into the Bankruptcy Court to go to the general creditors of Dr. McKelvey. The position of the appellees was, and is, that they are entitled to acquire the 80 shares of stock by paying a total of $21,703.31, being the value, as determined by the bylaw of the Corporation and the agreement signed by Dr. McKelvey; that from such an amount the Bank should be paid in full and the balance should go to the Bankruptcy Court. The Trial Court upheld the contention of the appellees, and the Trustee in bankruptcy has appealed. The question is whether the Trial Court was correct in sustaining the contentions of the appellees.

I. *The Maturity Of The Bank's Note.*

The appellant vigorously urges: (a) that the McKelvey note was not due on June 22, 1961; (b) that the Bank

could not accelerate the maturity as it attempted to do; and (c) that there was no legally sufficient tender to the Bank by the appellees on June 22, 1961, or any other time. To support these contentions, the appellant quotes from the note, and the germane portion reads:

"Paragould, Ark. 4-1-61. On demand, after date, and if no demand is made, then on the 1st day of Oct., 1961, for value received, I, We or Either of us promise to pay to the order of First National Bank of Paragould, Ark. Ninety five Hundred and no/100 Dollars $9500, for value received, with interest at the rate of 6 per cent per annum from date until paid. This note is secured by pledge of the securities mentioned on the reverse hereof, with the right to call for additional securities should the same decline, and on failure to respond, this obligation shall be deemed to be due and payable on demand, with full power and authority to sell and assign and deliver without notice, the whole of said property or any part thereof, or any substitutes therefor, or any additions thereto, at public or private sale, at the option of the payee herein . . ."

The appellant says that the clause in the note, *about demanding additional security*, limits the opening words in the note *(i.e., "on demand")* to a demand *only when the security is deemed insufficient;* and that the security was never deemed insufficient because the Drug Company admits the pledged stock to be worth in excess of $21,000 and the note was only for $9,500 and interest. On these and other matters the appellant urges that the demand on June 22, 1961, and the Bank's attempt to mature the note, were abortive and insufficient. These are all interesting questions which we find it unnecessary to decide.[3] The question of the right of the Bank to mature the note and make demand on June 22, 1961 (or at any other date before October 1, 1961) becomes of no importance and is not decided because, when the Trustee in bankruptcy

---

[3] The two Missouri cases of *Brown* v. *McGuire* (Mo. App.), 101 S. W. 2d 41, and (Mo. Sup. Ct.) 121 S. W. 2d 754, involved a note which stated, "On demand, and if no demand be made then on the 1st day of Feb. 1933, . . ." We are not here concerned with negotiability of such a "demand note," in the light of our holding in *Murrell* v. *Exchange Bank*, 168 Ark. 645, 271 S. W. 21.

intervened in the pending litigation on October 12, 1961, and claimed the right to have the McKelvey certificate of stock in the Drug Company sold, the note was then past due at all events, and such intervention by the Trustee was the assertion of a claim by a "creditor armed with process";[4] and the determining issue became whether the Drug Company could exercise its prerogatives as claimed under the Bylaw No. 1 and/or the agreement signed by Dr. McKelvey, as hereinafter discussed. The McKelvey injunction case had temporarily prevented the appellees from acquiring the McKelvey stock from the Bank, so the question of the maturity of the note by demand prior to October 1, 1961 became moot, when the Trustee in bankruptcy pleaded on October 12, 1961 and the case was tried on November 8, 1961. We therefore hold that the appellant's contention about the maturity of the Bank's note is beside the point on this appeal.

II. *The Bylaw No. 1.* As aforesaid, on October 12, 1961 the appellant, as Trustee in bankruptcy of Dr. McKelvey, intervened in the two Chancery suits. On that date the McKelvey note to the Bank was past due at all events, and the appellees were claiming the right to acquire the McKelvey stock for the book value of the stock. The Trustee in bankruptcy resisted such contention; and that is the issue—and the only issue—to be decided.

It was shown that in 1958 the Drug Company had filed with the Secretary of State an amendment to its charter,[5] which provided, *inter alia,* that the corporation might "adopt by-laws placing limitations upon the sale, transfer, or pledge of the stock of the corporation to the extent not prohibited by law . . . and the individual stockholder shall have accepted such by-law with the fact of its acceptance to be endorsed upon his stock certificate then, thereafter the restrictions, limitations and options as herein referred to shall bind the individual shareholder

---

[4] See § 47 of the Bankruptcy Act (11 U.S.C.A. § 75), and *Imperial Assur. Co.* v. *Livingston* (8th Cir.), 49 F. 2d 745, 74 A.L.R. 1336; and see also 6 Am. Jur. p. 914, "Bankruptcy" § 637.

[5] This amendment to the Articles of Incorporation was duly filed with the Secretary of State on July 7, 1958 and was duly recorded with the County Clerk of Greene County on July 8, 1958.

of the corporation whose certificate is so endorsed, his assigns, mortgagees, pledgees, heirs, administrators, and personal representatives." It was also shown that on April 18, 1960 the City Drug Company duly adopted Bylaw No. 1, effective the same day, which stated, *inter alia:*[6]

"The corporation, or its appointee, shall be entitled to acquire and purchase from a shareholder, or his estate, any and all shares of stock in the City Drug Company, in accordance with the terms of this By-Law . . . Should any shareholder pledge his stock for any personal debt of the shareholder without having redeemed said pledge prior to the maturity of the debt or any extension thereof."

The Bylaw further provided that the price to be paid for the said stock should be "the book value of the stock as of the close of the last fiscal year of the corporation, plus interest at six per cent per annum from the close of said fiscal year to the date on which said purchase option shall be exercised, and the consideration shall be paid less any intervening dividends paid."

The stock of Dr. McKelvey[7] was at that time pledged to the First National Bank to secure a note, of which the $9,500 note herein represents a renewal. The secretary of the Drug Company delivered a typewritten copy of the Bylaw No. 1 to the Bank, with the request that the copy be attached to the McKelvey stock certificate, in compliance with § 64-315 Ark. Stats.; but the Bank refused to receive the Bylaw and attach it to the stock certificate because Dr. McKelvey objected. The appellant urges most strenuously that this Bylaw No. 1 was never endorsed on the stock certificate, as required by § 64-315

---

[6] This Bylaw No. 1 is quite lengthy, occupying five typewritten pages in the transcript. The topic headings in the Bylaw are:
"A.  Conditions upon which corporation or appointee shall be entitled to acquire stockholder's stock.
B.  Effective date and terms of purchase.
C.  Cessation of option to purchase.
D.  Effective date of Bylaw.
E.  Endorsements upon stock certificates."
The portions of the Bylaw pertinent to this case are stated in this opinion.

[7] The 80 shares of Dr. McKelvey's stock were evidenced by several stock certificates, but we have all the time referred to these certificates collectively as "stock certificate."

Ark. Stats., and therefore the Bylaw lacks validity. Appellee urges, with equal tenacity, that the secretary of the corporation delivered a copy of the Bylaw to the Bank to be attached to the certificate; that Dr. McKelvey prevented such accomplishment; that both the Bank and Dr. McKelvey knew of the Bylaw; and that equity regards that as done which ought to have been done. There is respectable authority to sustain the position of each side;[8] but we find it unnecessary to rest our holding on the validity, *vel non*, of the Bylaw because, at all events, Dr. McKelvey and the Trustee in bankruptcy of his estate are bound in law and in equity by the agreement which Dr. McKelvey signed with the other stockholders, as now to be discussed.

III. *The Agreement Signed By All The Stockholders.* At the time Bylaw No. 1 was adopted by the corporation on April 18, 1960, all of the stockholders of the corporation (and this included Dr. McKelvey) signed this instrument: "Approval of By-Law. The undersigned, being all of the shareholders in City Drug Company, together with the wives of the married shareholders, do approve the foregoing By-Law and agree that their stock, as now or hereafter owned by them in City Drug Company, shall be held subject to the terms thereof. This agreement shall bind the undersigned, their heirs, executors, administrators, and assigns. Dated this 18th day of April, 1960." Stockholders may make such agreements between themselves, regardless of the validity of a bylaw of the corporation. In 13 Am. Jur. 412, "Corporations" § 336, the text summarizes the holdings:

"The right to transfer shares of stock may be restricted by agreement of the stockholders so long as such

---

[8] In 29 A.L.R. 2d 901 there is an annotation entitled, "Construction and effect of § 15 of Uniform Stock Transfer Act prohibiting restriction on transfer of shares unless such restriction is stated on the certificate"; and cases from various jurisdictions are there cited. There is another annotation in 61 A.L.R. 2d 1318 entitled, "Validity of restrictions on alienation or transfer of corporate stock." See also 13 Am. Jur. 413, "Corporations" § 338; and 18 C.J.S. 923, "Corporations" § 391 (c). Among other cases, we mention *Palmer* v. *Chamberlin* (5th Cir.), 191 F. 2d 532; *Hopwood* v. *Topsham* (Vt.), 132 A. 2d 170; *Baumohl* v. *Goldstein* (N. J.), 124 A. 118; *Doss* v. *Yingling* (Ind.), 172 N. E. 801; and *Tomoser* v. *Kamphausen* (N. Y.), 121 N. E. 2d 622.

restriction is not contrary to public policy as being in restraint of trade. The tendency of the courts is to sustain a restriction imposed by a corporation upon the alienability of stock, if reasonable and the stock has been accepted following its adoption and with knowledge of its provisions, whether such restriction is valid as a bylaw or not, on the ground that it constitutes a valid agreement between the stockholders and the corporation, especially if it goes no further than to give an option on the stock for a limited period. These principles are particularly applicable as against stockholders who assent to, or participate in, the adoption of the bylaw.''

And in 13 Am. Jur. 413, ''Corporations'' § 338, in discussing the validity of a bylaw restraining a stockholder from selling his stock in the open market without giving the other stockholders a prior opportunity to purchase the same, the holdings are summarized:

''According to the weight of authority, such a bylaw is valid and binding upon the stockholder, either as a regulation within the powers of the corporation or as a contract obligation voluntarily undertaken by the stockholder.''

In *Krauss* v. *Kuechler* (Mass.), 15 N. E. 2d 207, 117 A.L.R. 1355, there was involved a corporation of four stockholders; and in 1933 the corporation had attempted to adopt a bylaw which gave the surviving stockholders the right to acquire the certificates of any stockholder that might die. All four stockholders signed the instrument agreeing to such bylaw. In 1935 one stockholder died and when the survivors sought to acquire his stock they were met with the claim that the bylaw had not been filed in the office of the Secretary of State, as required by law. The Supreme Judicial Court of Massachusetts upheld the right of the surviving stockholders to acquire the stock of the deceased stockholder, basing the holding on the agreement signed by all the stockholders and entirely disregarding the validity, *vel non,* of the bylaw. Justice Qua, speaking for the Court, said:

"Even if the purported new by-law of March 3, 1933, never took effect as a valid by-law, either because it amounted to an amendment to the agreement of association and was never 'filed in the office of the state secretary' as required by G. L. (Ter. Ed.) c. 156 § 43, or for other causes, we see no reason why all the stockholders of a corporation cannot bind themselves to such a regulation by mutual agreement and estop themselves and their representatives thereafter to deny its validity. *Brown* v. *Little, Brown & Co., Inc.,* 269 Mass. 102, 106 *et seq.,* 168 N. E. 521, 66 A.L.R. 1284. See *Longyear* v. *Hardman,* 219 Mass. 405, 106 N. E. 1012, Ann. Cas. 1916D, 1200; *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 420, 144 N. E. 447; *Mitchell* v. *Mitchell, Woodbury Co.,* 263 Mass. 160, 164, 160 N. E. 539. 'It is settled that one may agree to sell his property at a price to be determined by another, and that he will be bound by the price so fixed, even though the party establishing it was interested; provided the interest was known, and no objection was made by the parties, and no fraud or bad faith is shown.' *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 153, 38 N. E. 432, 434, 27 L.R.A. 271; *Doherty* v. *Phoenix Assur. Co.,* 224 Mass. 310, 315, 112 N. E. 940.'"[9]

In the case at bar, Dr. McKelvey and all the other stockholders entered into a mutual agreement on April 18, 1960—more than one year before McKelvey's bankruptcy —whereby each stockholder gave the corporation and the other stockholders the right to acquire any pledged stock at a determinable value, if the pledge should not be redeemed at maturity. There was no fraud or unfairness of any kind in the agreement. Some of the other stockholders had their stock pledged at the time the agreement was signed. The agreement was fair: it was an option to pur-

---

[9] In addition to the cases listed in the foregoing quotation, there are many cases sustaining the agreement signed by the stockholders, regardless of the validity of the bylaw. Some such cases so holding are: *Doss* v. *Yingling* (Ind.), 172 N. E. 801; *Henry Simons* v. *Simons* (Minn.), 44 N. W. 2d 726; *Model Clothing* v. *Dickinson* (Minn.), 178 N. W. 957; *Federal Services Finance* v. *Bishop Natl. Bank* (9th Cir.), 190 F. 2d 442; *First National Bank of Canton* v. *Shanks* (Ohio), 73 N. E. 2d 93; and the score of other cases therein cited. See also 19 C.J.S. 922, "Corporations" § 391(b); and Fletcher-Cyclopedia of Private Corporations, Permanent Edition, § 5455 *et seq.*

chase at an ascertainable price—upon the happening of a contingency. The evidence shows that the amount tendered to the Bank in this case for the McKelvey stock was carefully ascertained and determined by an accountant in strict compliance with the method agreed upon by Dr. McKelvey and all the stockholders on April 18, 1960. The appellant, as Trustee in bankruptcy of Dr. McKelvey, elected to intervene in the pending litigation and is bound by the agreement relied on by appellees.

Affirmed.