SYSTEMATICS, INC *v.* Don B. MITCHELL

5-6157                                          491 S.W. 2d 40

Opinion delivered January 29, 1973
[Rehearing denied March 5, 1973.]

*Smith, Williams, Friday, Eldredge & Clark,* by: *Jerry T. Light* and *Lewis H. Mathis,* for appellant.

*Niblock & Hipp,* for appellee.

George Rose Smith, Justice. On June 30, 1969, the appellant, Systematics, Inc., a comparatively young company supplying services based upon data processing, issued to the appellee, an employee, 15,000 shares of Systematics stock at a price of ten cents a share. The stock was issued pursuant to a restrictive agreement by which Mitchell was required to offer to resell the stock to Systematics, at the same price, if he were discharged for cause.

About eleven months later Systematics discharged Mitchell for cause, but he refused to resell the stock to the company at the agreed price. Systematics brought this suit for specific performance of the contract. The chancel-

lor found that the price of ten cents a share was not "a fair price" within the terms of the controlling statute. Instead, the chancellor found the fair market value of the stock to be fifty cents a share. This appeal is from a decree giving Systematics the option of repurchasing the stock at a price of fifty cents a share. The one issue argued here is the validity of the restriction upon Mitchell's right to sell his stock to third persons.

The exact language of both the contract and the statute must be considered. The contract, which was executed by the company with a dozen of its employees, contained the following provisions:

"2. A Stockholder shall not have the right to transfer, assign, pledge, encumber or otherwise dispose of the shares subject hereto.

"3. On June 30, 1970, ten (10%) percent of the stock originally subject hereto owned by each Stockholder shall be relieved of and released from the restrictions imposed herein. A like number of shares shall be relieved of and released from the restrictions imposed herein on June 30 of each succeeding year until June 30, 1977, at which time all of the remaining stock shall be relieved of and released from such restrictions.

"4. In the event of the termination of a Stockholder's employment with the Corporation, except by reason of death or mental or physical disability, then the Stockholder shall offer all of his shares of stock then subject hereto for sale to the Corporation at a price of $.10 per share. The Corporation shall exercise its option to purchase by paying the purchase price to such Stockholder in cash within thirty (30) days after such offer. If such option is not exercised by the Corporation, then the Stockholder's stock shall remain subject to all the terms and provisions hereof. These provisions shall not apply when a Stockholder's employment is terminated by action of the Corporation without cause [in which event the stock is released from the restrictions]."

Systematics argues, in effect, that despite the statutory reference to "a fair price," the parties were free to

agree upon any price that was fair in the light of the agreement as à whole, without regard to the fair market value of the stock at the time of the exercise of the company's option to repurchase. To support its argument Systematics cites cases from other jurisdictions sustaining the validity of agreements such as this one. It is conceded, however, that all the cases cited were decided without reference to, and in the absence of, pertinent statutes.

The relevant statute is part of our comprehensive Business Corporation Act, adopted in 1965, and reads as follows:

> "A corporation may provide, in respect to any of its shares which are to be issued, that the future transfer (whether inter vivos, by inheritance or testamentary gift), hypothecation or other disposition of such shares shall be subject to restrictions (including purchase options) that do not unreasonably restrain alienation—which restrictions, among other things, may require a prior offering to the corporation or to one or more of its shareholders, at a fair price, before the shares may be otherwise transferred or hypothecated." Ark. Stat. Ann. § 64-211 (Repl. 1966).

The appended Committee Note to this section is especially enlightening with respect to the legislative intent:

> "The above is original draftmanship. Lawyers are often asked to prepare by-law provisions creating these restrictions; and it seems that there might as well be some statutory authority therefor. This section permits such restrictions on transfer as do not 'unreasonably restrain alienation.' This leaves considerable room for interpretation; but the committee did not want to attempt to spell out in detail what restrictions would unreasonably restrain alienation. As to such restrictions see Fletcher, Cyclopedia of Corporations, Permanent Edition, Section 5456. Vol. 12, Page 309; also Sections 5457, 5458."

The statute and the committee's note, when read together, make it clear that the draftsmen of the act

had at least two points in mind: First, such restrictions upon the transfer of stock must not unreasonably restrain alienation. That such an unreasonable restraint may be invalid is stated in Fletcher's Cylopedia, § 5456, and in *Ward* v. *City Drug Co.*, 235 Ark. 767, 362 S.W. 2d 27 (1962), also cited by the committee. Secondly, the restriction must provide a fair price for the repurchase of the stock. That point is discussed by Fletcher in § 5457, cited by the committee: "The determination of the price to be paid on the transfer of restricted shares is one of the most troublesome questions. . . . The methods most often used in the valuation of restricted shares are: (1) flat price; (2) book value; (3) a formula expressed as a multiple of average net earnings; (4) par value of shares."

The committee obviously decided to reject the "flat price" and the "par value" methods of price-fixing, because "a fair price" was selected as the approved standard. Moreover, in a law review article discussing the proposed corporation code before its enactment, the author had this to say, almost as if the case at bar had been before him:

"A leading New York case, *Allen* v. *Biltmore Tissue Corp.*, 2 N.Y. 2d 534, 141 N.E. 2d 812 (1957), held that a first option restriction is valid even though the price to be paid by the corporation exercising the option is fixed at the price the selling shareholder originally paid for his shares [the exact fact situation now before us]. Query whether this would be 'a fair price' within the meaning of the Arkansas statute if the shares have appreciated markedly in value. In order to be certain that first option provisions are not declared invalid because the price at which the shares are to be transferred is unfair, some provision may have to be made for adjusting the price from time to time as the shares change in value." O'Neal, The Small Corporation and the Proposed Arkansas Corporation Code, 17 Ark. L. Rev. 356, 360 (1963).

We are convinced by our study of the statute that (a) the restriction agreed upon must not unreasonably restrain alienation of the stock, and (b) the price agreed upon must be fair at the time of the repurchase, for the

statute explicitly refers to "the future transfer" of the stock. Hence a price that was fair when the contract was executed may not necessarily be fair some years later.

In our opinion the restrictive agreement now before us runs counter to both requirements of the statute. That is: First, the restriction unreasonably restrains alienation.. Counsel for Systematics argue that the corporation was *required* to repurchase Mitchell's stock when he was discharged, but we do not so read the contract. Paragraph 4, governing the matter of repurchase, vests the decision to repurchase or not to repurchase in the corporation, with this added language: "If such option is not exercised by the Corporation, then the Stockholder's stock shall remain subject to all the terms and provisions hereof." We see no reasonable interpretation of that language except to take it to mean that if the company decides not to repurchase the stock at ten cents a share, the stockholder still cannot sell the stock to anyone else until the restrictions ultimately expire under Paragraph 3 of the agreement. Thus the stockholder may be compelled for years to retain an investment in Systematics even though he has been discharged and has no desire to be connected with the company. We can only regard such a restriction as an unreasonable restraint upon the alienability of the stock.

Secondly, the price is not fair with respect to future sales of the stock, which is what the statute is talking about. The chancellor found the fair value of the stock at the time of trial to be fifty cents a share. That finding is not questioned by Systematics, which elected not to abstract the proof with respect to market value (its position being that that issue is not involved here). It is plain enough that a resale price of only 20% of the market value of the stock is not a fair price and for that reason tends to restrain the alienability of the property. Thus the second requirement of the statute, that the price be fair, is also wanting in the contract under consideration.

In affirming the decree we do not imply that the chancellor was right in fixing the fair market price at which Systematics may repurchase the stock. As we

pointed out in *Rector-Phillips-Morse* v. *Vroman,* 253 Ark. 750, 489 S.W. 2d 1 (1973), it is not the province of the courts to make contracts for the parties. The decree should have gone no farther than to declare the contractual option to be invalid, leaving the parties to their own devices. Mitchell, however, has not cross-appealed from the decree and is accordingly bound to abide by its provisions if Systematics elects to exercise the option recognized by the chancellor's decree.

Affirmed.

Harris, C. J., and Fogleman, J., dissent.

John A. Fogleman, Justice, dissenting. I must respectfully dissent because I do not agree that the statute rejected either of the four means of valuation of shares on an option to repurchase. The wide latitude of interpretation relates to the question whether the restraint on alienation is unreasonable, not on the question of ascertainment of a "fair price." Par value or flat price may, under appropriate circumstances, be a fairer price to all parties in a closely held corporation than book value or a multiple of average net earnings. The price paid by the purchaser to the corporation may be a fairer price to all concerned than either of the four other methods of valuation. In this case this was the par value, because the company was new and no other value had been established.

The agreement afforded employees entering into these contracts the opportunity to share in the profits of the company, if it was successful, and to have certain rights of ownership which could give them a voice in management. This agreement permitted the free alienation of 10% of this stock every year and thus was no unduly restrictive if the market value turned out to be in excess of the purchase price.

In the revised text of Vol. 12, Fletcher, Cyclopedia Corporations, Perm. Ed., § 5461.8 seems to have replaced the section quoted in the majority opinion and points up the reason why the closely held corporation and its stockholder should have great freedom in agreeing upon

the method of valuation. The first paragraph of that section reads:

> The determination of the price to be paid on the transfer of restricted shares is one of the most troublesome questions. The difficulty, of course, arises from the fact that the shares of a close corporation are not traded in the market and hence their fair market value cannot be readily ascertained. But such contracts as these under consideration usually provide a method for arriving at the value of the stock. In order to induce desired individuals into investing their capital in closely held corporations with stock restrictions often imposed, the price must be attractive as well as the prospects of future earnings. While a precise method of evaluating the stock might be desirable, restrictive agreements often allow a lot of leeway.

I am authorized to state that the Chief Justice joins in this dissent.

Supplemental Opinion on
Denial of Rehearing delivered
March 5, 1973

1. CORPORATIONS—RESTRICTIONS UPON ALIENATION OF STOCK—STATUTORY PROVISIONS.—In the statute providing for restrictions upon alienation of stock, restrictions are permitted that do not unreasonably restrain alienation, and the requirement of a fair price is merely an incident to the permissible restrictions.

2. APPEAL & ERROR—REMAND FOR FURTHER PROOF—REVIEW.—Remand for the taking of proof could not be granted in view of the Supreme Court's policy against piece-meal trial of cases since appellant had developed the issue of the purpose of the restrictive agreement to the extent it thought best.

Appeal from Washington Chancery Court; *Thomas F. Butt,* Chancellor; affirmed.

*Smith, Williams, Friday, Eldredge & Clark,* by: *Jerry T. Light* and *Lewis H. Mathis,* for appellant.

*Niblock & Hipp,* for appellee.

GEORGE ROSE SMITH, Justice, on rehearing. Systematics, in a petition for rehearing, argues that we based our opinion solely upon the unreasonableness of the contractual restraint on alienation. It is then contended that this involves a question of fact which was not really in issue between the parties. Upon that reasoning we are asked to remand the case for the taking of additional proof.

We do not find this argument convincing. In its original brief Systematics elected to abstract hardly any of the testimony contained in the 548-page record and to argue almost as a matter of law that the contract price was fair even though it had no relation to market value. It is impossible, however, to consider the issue of fair price, which *was* argued, without also considering the matter of restraint upon alienation, because the two are so inseparably tied together in the statute as to constitute a single issue. Omitting irrelevant words, here is the language of the statute:

> "A corporation may provide, in respect to any of its shares which are to be issued, that the future transfer. . . of such shares shall be subject to restrictions (including purchase options) that do not unreasonably restrain alienation—which restrictions, among other things, may require a prior offering to the corporation. . . at a fair price." Ark. Stat. Ann. § 64-211 (Repl. 1966).

It is at once apparent that the matter of a fair price cannot be considered in a vacuum. What the statute actually does is to permit restrictions that do not unreasonably restrain alienation. The matter of a fair price is mentioned only in a subordinate clause explaining possible permissible restrictions. But the thrust of the statute is directed against unreasonable restraints on alienability, the requirement of a fair price being merely an incident to the dominant legislative intention.

Systematics was put on notice from the outset that the statute was involved. Mitchell's counterclaim contained this assertion: "That said first option agreement is void in that under Ark. Stat. Anno. Section 64-211, the prior offering to the corporation [or] a stockholder must be made 'at a fair price' . . ." As we have indicated, the fairness of the price involves its effect upon alienability; the two cannot be separated. Consequently, the question of a restraint upon alienation was so inherently a part of the dispute from the very beginning that it would not have been possible for us to decide the controversy without taking it into account.

In connection with the petition for rehearing we granted a motion to allow several attorneys to file a supporting brief as *amici curiae*. That brief raises two issues that are not really involved, but since the opinion might otherwise be misunderstood we think it best to touch upon those issues.

First, counsel point out that Subsections A and B of the statute (§ 64-211) have to do with restraints that are contained either in the articles of incorporation or in the by-laws. It is then asserted that since the restraints in the case at bar were not so authorized, our decision threatens the validity and enforceability of many agreements made under Subsection C of the statute.

It is enough to say that this argument is based upon counsel's unfamiliarity with the record. At the beginning of the case Mitchell pleaded the statute and directed interrogatories to Systematics, asking whether provisions had been made in the articles of incorporation for the restrictions on the transfer of outstanding shares of stock. Systematics answered that the restrictions were contained in by-laws approved June 15, 1967. (Record, pp. 23-24.) Hence our opinion related only to Subsections A and B of the statute, with no reference to Subsection C.

Secondly, the *amici curiae* brief echoes Systematics' insistence that the factual issue of restraints upon alienability has not been fully developed. In that connection counsel say: "The Record is totally silent with respect to

Appellant's motive for this transaction. Depending upon Appellant's motive, these restrictions could well be regarded as 'reasonable' under Ark. Stats. § 64-211C."

Apart from the fact that § 64-211C is not involved, this second argument also indicates counsel's unfamiliarity with the record. Far from being "totally silent," the record contains much proof about the background for the contract. The terms of the agreement itself pretty well explain its purpose. Mr. Gattis, one of Systematics' executives, testified that the company used the contract as a "motivator" to show key employees "our intentions to make them a sincere part of our company." Mr. Smiley, another witness for Systematics, gave similar testimony, stating that the plan allowed the company to compensate executives in a fair manner and that it was made available to "the fourteen key people." Smiley also volunteered the information that the plan was no longer available, it having become illegal in July, 1970, under an IRS ruling with reference to capital gains.

In its original brief Systematics elected not to abstract the foregoing testimony, but that omission obviously does not entitle it to argue that the issue was not developed. The opportunity to develop it not only was presented but also was availed of to the extent that Systematics thought best. Our policy against the piece-meal trial of cases rebuts the suggestion that another opportunity for the taking of proof should be afforded.

The petition for rehearing is denied.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent not only for the reason stated in my original dissent, but because I do not believe that the fact that the type of restriction involved here was authorized by bylaws of the corporation prevents the operation of Ark. Stat. Ann. § 64-211C (Repl. 1966). That subsection starts off with the words "Nothing in this section is intended to prevent the holder or holders of any or all shares of a

corporation from subjecting their shares, by their own personal contract or agreement, to restrictions * * *." The words "Nothing in this section" obviously refer to subsections A and B, and the appellee definitely subjected his shares to the restrictions by his personal contract.

I adhere to the position taken on the original disposition of this case regardless of the matters set out in the supplemental opinion.